SYLLABUS

(This syllabus is not part of the opinion of the Court.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Supreme Court.  Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**In re Revocation of the Access of Block #613**  (A-102-13) (074011)

**Argued September 17, 2015 -- Decided January 14, 2016**

**CUFF, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In this appeal, the Court considers the standard governing revocation of direct access from a state highway to property used for commercial purposes pursuant to the State Highway Access Management Act (the Act), N.J.S.A. 27:7-89 to -98, and the State Highway Access Management Code (Access Code), N.J.A.C. 16:47-3.5(e)(11) and -3.8(k)(2).

Arielle Realty, L.L.C. (Arielle) is the owner of a three-tenant commercial property located on the northbound side of Route 166 in Toms River.  The property is located on the corner of West Gateway and Route 166 with direct access to both streets.  Eight parking spaces in the front of the building are located in a right of way acquired by the Department of Transportation (DOT) in the early 1970s.  Currently, a motorist driving north or south along Route 166 has direct access to the eight parking spaces in the front of the building.  A motorist exiting one of those spaces must back into the northbound lane of Route 166.  Eleven other parking spaces are accessed from West Gateway.  A motorist driving north or south on Route 166 may also turn onto West Gateway to access the remaining eleven parking spaces.

By an April 1, 2009 letter, the DOT informed Arielle that access to its property from Route 166 would be eliminated because the DOT intended to construct an additional northbound travel lane.  The DOT also advised Arielle that it intended to construct a median to separate northbound and southbound traffic on Route 166.  This design would eliminate the eight parking spaces in the front of the building and prevent direct access to Arielle's property for motorists traveling south on Route 166 because a motorist would no longer be able to make a left-hand turn onto West Gateway.  The DOT design plan provides for an alternate route to West Gateway that traverses approximately three-quarters of a mile.

Arielle notified DOT of its objection to the modification of its access and requested a hearing.  At a May 2009 meeting, Arielle outlined the consequences of the plan, including the reduced parking, the circuitous route proposed for access by some patrons, the prospect of loss of existing tenants, and the anticipated loss of value of the property.  The DOT responded that the proposed project had been designed to increase safety and traffic movement in the area and noted that it had considered and rejected several alternative designs, including a 2007 proposal that would have permitted motorists traveling south on Route 166 to make a left turn onto West Gateway.  By a June 9, 2009 letter, the Office of Access and Design (OAD) of the DOT advised Arielle that safety concerns associated with cars backing out of parking spaces onto Route 166 and the low clearance from the West Gateway unsignalized intersection prevented modification of the design.  The OAD determined that these conditions did not conform to the Access Code, specifically N.J.A.C. 16:47-3.5(e)(11) and -3.8(k)(2).

Arielle appealed and the matter was referred to the Office of Administrative Law (OAL).  At a hearing before an Administrative Law Judge (ALJ), the DOT outlined the purpose of the project, the various designs developed, the factors it considered in determining the final design, and its reasons for eliminating direct access from Route 166 to the Arielle property.  The ALJ concluded in her Initial Decision that the DOT plan satisfied all of the applicable legal requirements for revocation of Arielle's access to Route 166.  The DOT Commissioner (Commissioner) issued a final decision that adopted the ALJ's findings of fact, concluding that the DOT plan provided Arielle with reasonable access to the State's system of roads and highways.

The Appellate Division affirmed the Commissioner's final decision in an unreported opinion.  The

appellate panel determined that the DOT met its burden of proof that the alternative access plan was not only reasonable but also provided a convenient, direct, and well-marked means to enter the business and to return to the state road. Accordingly, the Appellate Division determined that the property owner failed to overcome the presumption of validity accorded to the DOT design.

The Supreme Court granted Arielle's petition for certification. 218 N.J. 273 (2014).

**HELD:** The record fully supports that the Department of Transportation satisfied its burden of proof to establish that the revocation of direct access from Route 166 to commercial property belonging to Arielle Realty, L.L.C. conforms with the State Highway Access Management Act and the State Highway Access Management Code.

1. In 1989, the Legislature adopted the State Highway Access Management Act, N.J.S.A. 27:7-89 to -98. The Act is designed to provide a statutory and regulatory framework for managing access to state highways. To that end, the Legislature contemplated the classification of state highways and the development of standards for the design and location of driveways, intersections, and interchanges, and directed the Commissioner to adopt a highway management access code. N.J.S.A. 27:7-91. The Act also addresses the standards for revocation or modification of existing access. N.J.S.A. 27:7-94. Any access to a state highway in existence prior to the effective date of the Act was deemed conforming to the terms of the Act and the Access Code. N.J.S.A. 27:7-92(c). The Act also permits the Commissioner to revoke access to a state highway "after determining that alternative access is available which meets the standards" for the property based on its use or zoning. N.J.S.A. 27:7-94(a). An access permit, however, may not be revoked without written notice and a hearing. (pp. 12-19)

2. As the owner of property situated along a state highway, Arielle has a right of reasonable access to Route 166. N.J.S.A. 27:7-90(e). N.J.S.A. 27:7-94(c)(1) establishes the standard for reasonable access to a state highway for property zoned or used for commercial purposes, when the Commissioner revokes or modifies access to a state highway. There are two criteria for reasonable access. First, there must be direct access to a street, highway, or service road; second, if improvements alter the route that patrons must take to gain access to the commercial property, the new route must be able to "support the traffic to the business" and must be convenient, direct, and well-marked. In re Bergen County Parkway 17 Associates, 324 N.J. Super. 322, 330 (App. Div. 1999). In addition, the DOT must design and install appropriate signage marking the alternative route to the property. N.J.S.A. 27:7-94(d). The DOT plan for the segment of Route 166 that affects Arielle's property was designed to increase the capacity of the roadway and to improve the safety and efficiency of the roadway. Eliminating the parking spaces along Route 166 permits the DOT to add an additional travel lane, thereby increasing the capacity of the roadway and curing the safety concerns caused by vehicles backing into the travel lane. Installation of a median also furthers the primary goals of the project by minimizing turns by southbound motorists that require crossing oncoming traffic. The DOT has designed a route that will lead directly to Arielle's property, will install signage directing patrons to the site, and will install a traffic signal to permit motorists to safely cross Route 166, turn onto West Gateway, and enter Arielle's property. As such, the DOT plan fully satisfies the statutory and regulatory requirements for access to the State's system of highways. (pp. 19-23)

3. The record fully supports that the DOT satisfied its burden of proof to establish that the revocation of direct access from Route 166 to Arielle's property conforms with N.J.S.A. 27:7-94(a) and N.J.A.C. 16:47-4.33(d)(2)(i). In other words, the DOT demonstrated that its alternative access plan provided not only reasonable access to Route 166 but also a convenient, direct, and well-marked means of reaching the commercial property and returning to the highway. In advancing an alternative design for the entire project that furthered its individual commercial ends rather than the DOT's overarching goal of providing reasonable access to the State's system of roads and highways, the property owner failed to overcome the presumption of validity afforded to the DOT plan. (p. 23)

The judgment of the Appellate Division is **AFFIRMED**.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, and SOLOMON join in JUDGE CUFF's opinion. JUSTICE FERNANDEZ-VINA did not participate.**

IN THE MATTER OF THE
REVOCATION OF THE ACCESS OF
BLOCK #613, LOTS #4 & 5,
TOWNSHIP OF TOMS RIVER, OCEAN
COUNTY (ARIELLE REALTY, LLC).

_____

ARIELLE REALTY, LLC,

     Appellant.


       Argued September 17, 2015 – Decided January 14, 2016

       On certification to the Superior Court,
       Appellate Division.

       Harry Jay Levin argued the cause for
       appellant Arielle Realty, LLC (Levin
       Cyphers, attorneys; Mr. Levin and Colleen
       Flynn Cyphers, on the brief).

       Wanda Y. Ortiz, Deputy Attorney General,
       argued the cause for respondent State of New
       Jersey Commissioner of Transportation (John
       J. Hoffman; Acting Attorney General of New
       Jersey, attorney; Lewis A. Scheindlin,
       Assistant Attorney General, of counsel;
       David R. Patterson, Deputy Attorney General,
       on the letter brief).

    JUDGE CUFF (temporarily assigned) delivered the opinion of

the Court.

    In this appeal, we consider the standard governing

revocation of direct access from a state highway to property

used for commercial purposes pursuant to the State Highway

Access Management Act (the Act), N.J.S.A. 27:7-89 to -98, and the State Highway Access Management Code (Access Code), N.J.A.C. 16:47-3.5(e)(11) and -3.8(k)(2). The issue is presented in the context of a challenge to a New Jersey Department of Transportation (DOT) design to widen a state roadway that involved elimination of eight parking spaces of a commercial building accessed directly from a state highway and installation of a median.

In response to an objection by the affected property owner, a hearing was conducted by the Office of Administrative Law (OAL) at which the DOT explained the general and specific reasons for the design it proposed and the property owner adduced expert opinion that argued in favor of an earlier proposed design that had been rejected by the DOT. Following a comparative analysis of the various design proposals, the DOT Commissioner (Commissioner) concluded that the proposed design challenged by the property owner best satisfied the statutory and regulatory goals for access by the public to this segment of the state system of roads and highways.

In affirming the Commissioner's decision, the Appellate Division determined that the DOT met its burden of proof that the alternative access plan was not only reasonable but also provided a convenient, direct, and well-marked means to enter the business and to return to the state road. Accordingly, the

2

Appellate Division determined that the property owner failed to overcome the presumption of validity accorded to the DOT design.

We affirm the judgment of the Appellate Division. We also take this opportunity to underscore that any design proposed by the DOT that restricts or revokes direct access to a commercial property from a state highway is presumed valid. If a property owner challenges the proposal, however, the DOT bears the burden of proving that the alternative access to the commercial property is reasonable and that it provides a convenient, direct, and well-marked route to enter the property and to return to the state highway. The Commissioner must also compare any alternative plan advanced by the property owner with the plan advanced by the agency and explain why the agency proposal better advances the statutory and regulatory scheme. Finally, although the Commissioner must engage in a comparative analysis of the features of the DOT's and the property owner's access plans, the Commissioner's analysis is ultimately aimed at selecting the plan that will best achieve the overarching goal of providing reasonable access to the state's system of highways rather than maximizing the business interests of a particular property owner.

I.

A.

3

Arielle Realty, L.L.C. (Arielle) is the owner of a three-tenant commercial property located on the northbound side of Route 166 in Toms River. An appliance store, a stained glass gallery, and a healthcare business currently occupy the premises.

The property is located on the corner of West Gateway and Route 166 with direct access to both streets. Eight parking spaces in the front of the building are located in a right of way acquired by the DOT in the early 1970s. Currently, a motorist driving north or south along Route 166 has direct access to the eight parking spaces in the front of the building. A motorist exiting one of those spaces must back into the northbound lane of Route 166. Eleven other parking spaces are accessed from West Gateway. A motorist driving north or south on Route 166 may also turn onto West Gateway to access the remaining eleven parking spaces. Route 166 serves as a connection between State Highway 37 and the downtown center of Toms River.

By an April 1, 2009 letter, the DOT informed Arielle that access to its property from Route 166 would be eliminated because the DOT intended to construct an additional northbound travel lane. The DOT also advised Arielle that it intended to construct a median to separate northbound and southbound traffic on Route 166. This design would eliminate the eight parking

4

spaces in the front of the building. The plan would also prevent direct access to Arielle's property for motorists traveling south on Route 166 because a motorist would no longer be able to make a left-hand turn onto West Gateway. According to the DOT design plan, a southbound motorist on Route 166, who intends to access Arielle's property, would be required to drive past the property, turn right onto a local road, turn right onto another local road, turn left onto Route 166 at an intersection controlled by a traffic signal, and turn right onto West Gateway. This alternative route traverses approximately three-quarters of a mile.[1]

B.

Upon receipt of the notice, Arielle notified DOT of its objection to the modification of its access and requested a hearing. At a May 2009 meeting, Arielle outlined the consequences of the plan, including the reduced parking, the circuitous route proposed for access by some patrons, the

---

[1] The DOT design would permit exiting northbound patrons of Arielle's tenants to turn right onto Route 166 from West Gateway. Southbound exiting motorists could either 1) turn right onto Route 166 northbound, enter a ramp for Route 37 eastbound, exit Route 37 onto a connecting street, and use a residential street or streets to reach their destination, 2) travel on West Gateway away from Route 166 and south through residential streets, or 3) turn right onto Route 166 northbound, enter a left-turning lane, cross Route 37, use a jughandle in the northwest corner to reverse direction on Route 166, and again cross Route 37.

5

prospect of loss of existing tenants, and the anticipated loss of value of the property. The DOT responded that the proposed project had been designed to increase safety and traffic movement in the area and noted that it had considered and rejected several alternative designs during development of the project design.

By a June 9, 2009 letter, the Office of Access and Design (OAD) of the DOT advised Arielle that two factors prevented modification of the design. The OAD remarked that motorists using the parking spaces along Route 166 had to back into a travel lane to leave the property. The existing conditions raised safety concerns, impeded traffic flow, and did not conform to the Access Code, specifically N.J.A.C. 16:47-3.5(e)(11) and -3.8(k)(2). Moreover, the clearance from the West Gateway unsignalized intersection was less than the required 50 feet. Arielle appealed and the matter was referred to the OAL.

At a hearing before an Administrative Law Judge (ALJ), the DOT outlined the purpose of the project, the various designs developed, the factors it considered in determining the final design, and its reasons for eliminating direct access from Route 166 to the Arielle property. Brian Mausert, a civil engineer employed by a private engineering firm, testified on behalf of the DOT as a fact and expert witness. He noted that Arielle's

6

current use and roadway access encroached on the state's existing right of way and violated the Access Code. Mausert opined that the proposed access plan to Arielle's property was "convenient, direct, and well-marked," and complied with the Access Code. He also opined that the DOT plan would be safer than the present access arrangement because it would reduce the number of total traffic points of conflict by eliminating turns across traffic by southbound motorists and motorists backing into the northbound lane to exit the site. Mausert stated that the route identified for southbound patrons to access Arielle's property would be safe because all traffic movement proximate to the Arielle site would occur under a controlled condition, namely, the traffic signal at the intersection.

Mausert also testified that an alternative design developed in 2007 would have permitted motorists traveling south on Route 166 to make a left turn onto West Gateway. He stated that the 2007 design was rejected for many reasons, including opposition from residents who lived on and near West Gateway and the need to condemn Arielle's property to effectuate the design.

Arielle presented the testimony of John N. Ernst, an expert in civil engineering, site development including highway access, and municipal zoning and parking requirements. Ernst testified that the Arielle property should have twenty-nine parking spaces and that the remaining eleven parking spaces were not sufficient

7

to support the commercial use of the property. Ernst conceded that eliminating the parking spaces along Route 166 was a reasonable step to enhance safety along the corridor. However, he opined that the circuitous access route for southbound patrons was unreasonable. Ernst maintained that using West Gateway as the primary access for the property contravened the Access Code. Finally, Ernst contended that the earlier proposals, particularly the 2007 proposed design, better addressed the DOT's safety concerns than the current plan.

Arielle also presented testimony from John Rea, a traffic engineer. He opined that the DOT plan did not satisfactorily address traffic safety. In fact, he concluded that the design plan was unreasonable. Rea stated that the prior proposals, including the 2007 proposal favored by Arielle, were "a more reasonable and more conventional engineering solution[.]" He criticized the placement selected for the traffic control device on Route 166 because it created offsetting T-intersections that violated certain legal and engineering standards.

The ALJ concluded in her Initial Decision that the DOT bore the burden of proof regarding the reasonableness of its access plan for Arielle, and that the DOT plan satisfied all of the applicable legal requirements for revocation of Arielle's access to Route 166. The ALJ noted that Arielle attempted to concentrate its objections on the elimination of eight parking

8

spaces, yet she concluded that its primary complaint focused on the installation of the median to separate the travel lanes. The ALJ recognized that the existing parking along Route 166 was located in a DOT right of way and violated the Access Code, and found that revocation of access from Route 166 cured those problems. The ALJ found that access from West Gateway was direct and convenient and concluded that the revised access plan was direct with appropriate signage.

The Commissioner issued a final decision that adopted the ALJ's findings of fact. The Commissioner determined that the DOT plan provided Arielle with reasonable access to the State's system of roads and highways. The Commissioner rejected Arielle's contention that he should evaluate such factors as safety, changed traffic patterns on local roadways, and earlier designs that the DOT considered, finding that those factors "are not part of the standards set forth in the Access Act and the Access Code, [and] are not relevant in determining whether the proposed alternative access satisfies the statutory and regulatory requirements." The Commissioner also concluded that the loss of the left-turn access from southbound Route 166 due to the installation of the median was the core of Arielle's complaint.

C.

9

The Appellate Division affirmed the Commissioner's final decision in an unreported opinion. The panel determined that the Commissioner's decision was supported by substantial credible evidence in the record. The appellate panel observed that "[i]t is irrelevant that other plans might also be reasonable or safe." Rather, under the Act and Access Code, the Commissioner is vested with the authority to select a plan that comports with the statutory and regulatory criteria. The appellate panel also found that the ALJ properly assigned the burden of proof regarding the reasonableness of the plan to the DOT and that the Commissioner re-evaluated the evidence in accordance with the correct principles of law.

The Appellate Division also concluded that Arielle's objection to the access plan was founded in part on the construction of a median that would eliminate left-turn access to its property from southbound Route 166. The panel noted, however, that neither the ALJ nor the Commissioner based their decisions on this element of the plan. Rather, their decisions focused on whether the DOT plan provided reasonable access to Arielle's property.

This Court granted Arielle's petition for certification. In re Revocation of the Access of Block #613, 218 N.J. 273 (2014).

II.

10

Arielle asserts that the DOT access plan "woefully" fails to provide reasonable alternative access to its property. Arielle contends that the elimination of all parking spaces along Route 166 and restricted access from Route 166 affects the commercial viability of its property and the businesses located at the site. Furthermore, Arielle contends that any access plan must account for the use of the property affected by the plan and "the expected traffic plan."

Arielle insists that the proposed route for southbound motorists is neither reasonable nor direct. It contends that it proposed a more reasonable alternative. More importantly, Arielle asserts that any consideration of the reasonableness of an access plan is a comparative process. Therefore, Arielle contends that the Commissioner's determination, which does not reflect consideration of other access plans, is inherently flawed and cannot be sustained. Finally, Arielle argues that it demonstrated that the alternative access plan it advanced, which requires the DOT to acquire its property, is a "more reasonable alternative."

The DOT responds that the revocation of access from Route 166 to Arielle's property satisfies the statutory standards for reasonable alternative access and that the Commissioner's decision should be affirmed. The DOT emphasizes that the existing access to Arielle's property does not conform to the

11

Access Code in several respects and the modification of access required by its project design resolves all of the safety concerns caused by the existing access from Route 166. The DOT contends that Arielle's objections to the revocation of one of two access points to its property is a thinly disguised objection to the construction of the median.

III.

In 1989, the Legislature adopted the State Highway Access Management Act, N.J.S.A. 27:7-89 to -98. The Act is designed to provide a statutory and regulatory framework for managing access to state highways. Assembly Appropriations Comm., Statement to S. No. 772 (Assembly Statement) (1988). The Legislature declared that the State has a public responsibility "to manage and maintain effectively each highway within the State highway system[,]" N.J.S.A. 27:7-90(c), and recognized that every owner of property that abuts a public highway has "a right of reasonable access to the general system of streets and highways in the State," N.J.S.A. 27:7-90(e), but acknowledged that "unrestricted access to State highways can impair the purpose of the State highway system[,]" N.J.S.A. 27:7-90(d). To that end, the Legislature contemplated the classification of state highways and the development of standards for the design and location of driveways, intersections, and interchanges, Assembly Statement, supra, and directed the Commissioner to adopt a

12

highway management Access Code. N.J.S.A. 27:7-91. The Act also addresses the standards for revocation or modification of existing access. N.J.S.A. 27:7-94. Any access to a state highway in existence prior to the effective date of the Act was deemed conforming to the terms of the Act and the Access Code. N.J.S.A. 27:7-92(c).

The Act also permits the Commissioner to revoke access to a state highway "after determining that alternative access is available which meets the standards" for the property based on its use or zoning. N.J.S.A. 27:7-94(a). For property zoned or used for commercial purposes,

> [a]lternative access shall be assumed to exist if the property owner enjoys reasonable access to the general system of streets and highways in the State and in addition . . . (1) access onto any parallel or perpendicular street, highway, easement, service road or common driveway . . . is so situated that motorists will have a convenient, direct, and well-marked means of both reaching the business or use and returning to the highway.
>
> [N.J.S.A. 27:7-94(c)(1).]

An access permit may not be revoked without written notice and a hearing. N.J.S.A. 27:7-94(a). The Commissioner must also provide the property owner with a plan detailing the manner in which the alternative access shall be obtained and a description of the improvements that will be provided to secure the alternative access. N.J.S.A. 27:7-94(b). The improvements may

13

include signage for motorists marking the alternative route to the site. N.J.S.A. 27:7-94(d).

The Access Code, N.J.A.C. 16:47-1.1 to -8.5, addresses revocation of access. N.J.A.C. 16:47-4.33(d)(2)(i) mirrors the statutory provision for revocation of access. In re Route 206 at New Amwell Road, Block 161, Lot 13B (Hillsborough), 322 N.J. Super. 345 (App. Div.), certif. denied, 162 N.J. 197 (1999), summarized the Access Code requirements when modifying or revoking access as follows:

> When the DOT initiates a highway project that modifies access, the regulations require the DOT to notify each lot owner in writing of the proposed access modification and provide the lot owner with a plan showing the modification prior to beginning construction. N.J.A.C. 16:47-4.33(c)2. The lot owner is provided with thirty days from receipt of the DOT's notice to advise the DOT whether it accepts the modification plan or intends to appeal the administrative decision. N.J.A.C. 16:47-4.33(c)4. In the event an administrative appeal is filed, the Manager of the Bureau of Civil Engineering must schedule an informal meeting with the property owner to resolve any differences. Thereafter, the Manager is required to issue a written decision within thirty days. In the event of disagreement with that decision, the property owner has an additional thirty days to appeal to the Director who must then schedule an informal hearing within ten days. N.J.A.C. 16:47-4.33(c)5. At this informal hearing, the property owner is given an opportunity to present further information regarding objections to the modification plan. N.J.A.C. 16:47-4.33(c)6. Within thirty days of the informal hearing, the Director's written

14

> "final agency decision" is required to be issued, in which the Director shall:

> > consider the information presented at the hearing and the recommendation of the hearing officer if designated and the criteria set forth in the Act and these regulations, the lot owner's right of reasonable access to the general system of streets and highways in the State and the public's right and interest in a safe and efficient highway system.

> [N.J.A.C. 16:47-4.33(c)7.]

> [Id. at 356-57.]

In Hillsborough, the DOT proposed to eliminate one of two access driveways from a highway to a service station and to widen the remaining driveway. Id. at 350. It also proposed closing one of two driveways fronting on a local street and widening the remaining driveway. Ibid. Although the plan maintained direct access to the state highway, the internal traffic circulation pattern of the service station was altered. Id. at 352. The Commissioner rejected the property owner's challenge to the access plan, reasoning that the modification would not prevent use of the site as a service station. Ibid. The Commissioner also determined that the modified access plan would serve a substantial public benefit. Id. at 358.

The Appellate Division determined that the DOT plan was a modification of access rather than a revocation of access.

15

Ibid.  It also recognized that the DOT "has reasonable discretion in developing methodology to fulfill its statutory obligation," id. at 357, and that the agency "enjoys 'a great deal of flexibility in selecting the proceedings most likely to achieve their regulatory aims[,]'" ibid. (quoting N.J. Dep't of Envtl. Prot. v. Stavola, 103 N.J. 425, 436-37 (1986)).  The panel concluded that the property owner failed to rebut the presumption of validity accorded to the Commissioner's decision and that the Commissioner's determination was a reasonable exercise of agency discretion and neither arbitrary nor capricious.  Id. at 358.

In re Bergen County Parkway 17 Associates (Parkway 17 Assocs.), 324 N.J. Super. 322, 328-29 (App. Div.), certif. denied, 162 N.J. 664 (1999), addressed revocation of all ingress and egress from a state highway to a modern office building in the context of the extensive reconstruction of the intersection of two heavily used state highways.  The proposed access plan maintained the ability to enter and exit the property from a local road.  Id. at 330.

In the course of its examination, the DOT identified safety and visibility concerns regarding the existing state highway access.  Id. at 329.  The DOT proposed an alternative access plan in which a southbound motorist on the state highway would travel past the existing entry to a newly constructed ramp

16

leading off the highway until the motorist reached the intersection of the ramp with a to-be-constructed-entry drive that would provide motorists access to two newly created entries from the access drive. Id. at 330. The newly created access drives would serve the office building and other properties, including a large retail store. Id. at 331.

The owner of the office building objected to the proposed alternative access plan. Ibid. The DOT concluded that the proposed access drives could handle the traffic volume, and would add a minimal amount of additional travel time for motorists. Ibid. Finally, the DOT determined that the proposed access drives satisfied the statutory requirement of alternative access to a parallel or perpendicular street and that the plan was convenient, direct, and well-marked. Id. at 331-32. Following a hearing before the OAL and issuance of an Initial Decision, the Commissioner rejected the property owner's objection to the proposed alternative access plan. Id. at 327-28.

The Appellate Division rejected the property owner's contention that the proposed plan did not provide reasonable alternative access. It determined that the direct access requirement of section 94(c) of the Act does not mean "an immediate passage from a state highway onto an abutting property." Id. at 338. Rather, the panel stated that the

17

agency's interpretation of direct as "reasonably straight" and its interpretation of convenient as referring "to the entry of vehicles onto the property itself, rather than the means of reaching the property," were realistic. Id. at 338-39. Moreover, the panel noted that the new entry points aligned with the existing traffic aisles within the property, thereby underscoring the convenience of the alternative access plan. Id. at 339.

Importantly, the Appellate Division emphasized that determining whether the agency's proposed access plan satisfies the statutory requirements is best accomplished when one proposed plan is compared or contrasted with another. Id. at 342. The panel explained that

> the statutory criteria which include standards such as "direct" and "convenient" are not precise, mathematical terms, but rather generally stated objectives. That being so, those terms may well be given more specific meaning and content when one proposed plan is compared or contrasted with the other. A proposed additional plan which is more "direct" or more "convenient" than one before the Commissioner, may well have an impact in determining whether the proposal under review can properly be deemed "direct" or "convenient." Thus, when a reasonable alternative is presented, fair treatment and realistic appraisal of the subjective and generalized terms of the statute would normally call for the Commissioner to consider such alternatives in reaching a decision.
>
> [Id. at 342-43.]

18

The panel held that the Commissioner is required to consider an alternative access plan submitted by a property owner.  Id. at 343.  When a property owner proposes an alternative access plan that contains features that fail to address the very concerns that triggered the need for a new design, or contains other features that would have been inevitably rejected, adoption of the agency-proposed alternative access plan and rejection of the property owner's plan cannot be considered arbitrary, unreasonable, or capricious.  See ibid. (finding no harm in Commissioner's failure to consider property owner's alternative plan).

IV.

As the owner of property situated along a state highway, Arielle has a right of reasonable access to Route 166.  N.J.S.A. 27:7-90(e).  N.J.S.A. 27:7-94(c)(1) establishes the standard for reasonable access to a state highway for property zoned or used for commercial purposes, when the Commissioner revokes or modifies access to a state highway.  The plain language of section 94 declares that alternative access to commercial property "shall be assumed to exist" when there is reasonable access to the property from a parallel or perpendicular street or highway that can support the traffic to the business and the route is convenient, direct, and well-marked.  Ibid.  We construe this language to establish two criteria for reasonable

19

access.  First, there must be direct access to a street, highway, or service road; second, if improvements alter the route that patrons must take to gain access to the commercial property, the new route must be able to "support the traffic to the business" and must be convenient, direct, and well-marked. See Parkway 17 Assocs., supra, 324 N.J. Super. at 330.  In addition, the DOT must design and install appropriate signage marking the alternative route to the property.  N.J.S.A. 27:7-94(d).

The alternative access plan proposed by the DOT is presumed valid.  Parkway 17 Assocs., supra, 324 N.J. Super. at 334-35. However, if a property owner objects to the agency-proposed alternative access plan, the DOT bears the burden of demonstrating that its plan satisfies the statutory and regulatory requirements.  Id. at 336.

The DOT plan for the segment of Route 166 that affects Arielle's property was designed to achieve two primary goals. The first goal was to increase the capacity of the roadway.  The second goal was to improve the safety and efficiency of the roadway.  As presently designed, a patron of an Arielle tenant may access one of eight parking spaces in the front of the building directly from Route 166.  When departing, the patron must back into the northbound lane of traffic on Route 166. That maneuver creates safety problems and also impedes the free

20

flow of traffic. Furthermore, those eight parking spaces occupy a right-of-way obtained by the DOT in the 1970s. Eliminating the parking spaces along Route 166 permits the DOT to add an additional travel lane, thereby increasing the capacity of the roadway and curing the safety concerns caused by vehicles backing into the travel lane. Installation of a median also furthers the primary goals of the project by minimizing turns by southbound motorists that require crossing oncoming traffic.

To be sure, Arielle's loss of eight parking spaces burdens the property. Arielle readily concedes, however, that the property has functioned for many years with significantly fewer parking spaces than required for commercial uses in the municipality. The Arielle site is further burdened by the DOT design because a patron of one of the Arielle tenants traveling south on Route 166 is denied direct access to the site. The DOT, however, has designed a route that will lead directly to Arielle's property, will install signage directing patrons to the site, and will install a traffic signal to permit motorists to safely cross Route 166, turn onto West Gateway, and enter Arielle's property. The route may be longer but it provides direct access to the remaining parking spaces on the property. As such, the DOT plan fully satisfies the statutory and regulatory requirements for access to the State's system of highways. Parkway 17 Assocs., supra, 324 N.J. Super. at 338-39.

Moreover, the Commissioner evaluated Arielle's objection to the DOT's proposed design by comparing it to the plan advocated by Arielle. Indeed, the Commissioner was familiar with the plan advanced by Arielle because it was one of several designs developed but rejected by the DOT during the design phase of the project.

Here, Arielle advocated for the use of the DOT'S 2007 design for widening Route 166, arguing that it was reasonable and in conformity with N.J.S.A. 27:7-94(c)(1). It insists that the 2007 plan included a four-way intersection at Route 166 and West Gateway controlled by a traffic signal that would have permitted northbound and southbound traffic to turn safely onto local roads. Arielle ignores, however, that the intersection contemplated by the 2007 plan required substantial changes to existing roadways because West Gateway, on the east side of Route 166, does not align with the nearest cross-street on the west side of Route 166. Moreover, the roadway configuration contemplated by the proposed four-way intersection requires the acquisition of some, if not all, of Arielle's property. Understandably, a property owner might favor the taking of its property when facing the elimination of direct access to a highway and the loss of eight parking spaces. A plan that requires a direct purchase or condemnation of a commercial property owner's property is not an alternative access plan for

22

the property owner.  It is a different design plan that furthers the property owner's personal commercial interests rather than the public interest.

## V.

In sum, the record fully supports that the DOT satisfied its burden of proof to establish that the revocation of direct access from Route 166 to Arielle's property conforms with N.J.S.A. 27:7-94(a) and N.J.A.C. 16:47-4.33(d)(2)(i).  In other words, the DOT demonstrated that its alternative access plan provided not only reasonable access to Route 166 but also a convenient, direct, and well-marked means of reaching the commercial property and returning to the highway.  In response to the objection advanced by the property owner, the DOT compared its proposed plan with the alternative advocated by the property owner.  In the end, the record establishes that the property owner advanced an alternative design for the entire project that furthered its individual commercial ends rather than the DOT's overarching goal of providing reasonable access to our system of state highways and roads.  In doing so, the property owner failed to overcome the presumption of validity afforded to the DOT plan.

## VI.

The judgment of the Appellate Division is affirmed.

23

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, and SOLOMON join in JUDGE CUFF's opinion.  JUSTICE FERNANDEZ-VINA did not participate.

SUPREME COURT OF NEW JERSEY

NO.   A-102                         SEPTEMBER TERM 2013

ON APPEAL FROM        Appellate Division, Superior Court


IN THE MATTER OF THE REVOCATION OF
THE ACCESS OF BLOCK #613, LOTS #4 & 5,
TOWNSHIP OF TOMS RIVER, OCEAN
COUNTY (ARIELLE REALTY, LLC).


ARIELLE REALTY, LLC,

   Appellant.


DECIDED              January 14, 2016
                 Chief Justice Rabner            PRESIDING

OPINION BY        Judge Cuff

CONCURRING/DISSENTING OPINION BY

DISSENTING OPINION BY


| CHECKLIST | AFFIRM | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | -------------------- | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |