**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1580-22

IN RE ROUTE 27, DRIVEWAY
MODIFICATION APPEAL, BLOCK
3516, LOTS 1, 30 AND 65, NEWARK,
ESSEX COUNTY (THIRTY-THREE
QUEEN REALTY, INC.).

_____

Submitted February 13, 2024 – Decided September 3, 2024

Before Judges Sumners and Perez Friscia.

On appeal from the New Jersey Department of Transportation.

Genova Burns LLC, attorneys for appellant Thirty-Three Queen Realty, Inc. (William F. Harrison, of counsel and on the briefs; Celia S. Bosco, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Department of Transportation (Sara M. Gregory, Assistant Attorney General, of counsel; Dennis J. Mikolay, II, Deputy Attorney General, on the brief).

PER CURIAM

Thirty-Three Queen Realty, Inc. owns an industrial property in Newark located at the corner of an intersection, fronting Route 27's northbound lane and

adjacent to an eastbound ramp entrance to an overpass highway, Route 22. The property is occupied by two tenants: Flexon Industries, a water hose manufacturer, and US Wire & Cable Corporation, an extension cord manufacturer. There are two access points. One access point is a two-way driveway to Route 27 northbound and southbound (Route 27 driveway). This is primarily used by Flexon's 300 plus employees and continuously operates twenty-four hours a day, seven days a week, with approximately two dozen daily deliveries from fifty-three-foot-long tractor trailers. The second is an adjacent on-ramp two-way driveway, via a right turn, onto Route 22 eastbound. Only the Route 27 driveway is at issue on appeal.

Due to safety concerns, the New Jersey Department of Transportation, through its Office of Access Design, proposed to undertake several modifications to the intersection fronting Route 27's driveway. Titled the "Dehart Place to Route 21 Resurfacing Project," the project would bring the property's access points into closer compliance with the New Jersey State Highway Access Management Code (Access Code), N.J.A.C. 16:47-1.1 to -14.1. The proposal also sought to remediate existing Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-213, violations.

The Department was concerned about the Route 27 driveway because it "'is not controlled by the signal', . . . so when there is a red light, and vehicles on Route 27 northbound 'actually stop at the [stop bar],' a vehicle on the [p]roperty 'can freely exit' through [the] [d]riveway." Due to the location of the stop bar[1] and traffic signal, an "exiting vehicle . . . conflict[s] with (1) 'vehicles that are turning left onto [Route 22's on-ramp]' from [R]oute 27 southbound and . . . (2) pedestrians in the crosswalk." Consequently, the Department planned to: (1) reduce the width of the Route 27 driveway from 77.5 to 66 feet; (2) install brand-new traffic signals and upgrade the surrounding traffic signals timing; (3) add bicycle ramps and ADA-compliant crosswalks; and (4) expand Route 27 from two lanes in each direction to three. Additionally, because of the lane expansion, the project also eliminated left turns in and out of the property, thereby only allowing vehicles to enter the property by turning right into the

---

[1] A stop bar, also called a stop line, is the "solid white line[] extending across [the end of a lane] indicat[ing] the point at which [a vehicle is intended to or required to] stop." Fed. Highway Admin., U.S. Dep't of Transp., <u>Manual on Uniform Traffic Control Services</u> § 3B.16(6) (rev. 2009).

A-1580-22

Route 27 driveway and exiting right out of the property's on-ramp Route 22 driveway.[2]

Recognizing how essential the left turn maneuver is to Queen Realty's business, its owners submitted to the Department two traffic engineering assessments addressing the impact the modifications would have on the property and proposing alternative modifications that would preserve the left turn movements from and onto Route 27. After considering concerns raised by Queen Realty and its traffic engineering expert, Shropshire Associates LLC, the Department revised its proposed modifications. The revised modifications changed the location of the stop bar "perpendicular to the [d]riveway," so that it would only prevent an "exiting vehicle" from turning right while vehicles idled the Route 27's southbound traffic signal. The revision also added a concrete median opposite the Route 27 driveway to ensure egressing vehicles would not make left turns onto Route 27 southbound. However, the final plan still prohibited left turns into and out of the property and onto and from Route 27 northbound.

---

[2] Because the modifications would not resolve any of the existing violations, the Department planned to issue several waivers.

A-1580-22

Queen Realty appealed the final plan, requesting a contested hearing before an administrative law judge (ALJ) of the Office of Administrative Law (OAL). The request was denied but the challenge was referred to the Department's Director of the Division of Right of Way and Access Management (Director) to conduct formal public hearings.

Over the course of two days of hearings, several witnesses provided testimony relevant to this appeal. For the Department, Nirah Shah, John Eric Henson, and James Vena testified. Shah, a resurfacing project engineer and case manager, served as a fact witness, detailing the property's four Access Code violations and explaining how the final plan would improve the safety of the intersection fronting the property's Route 27 driveway, which is one of the "top 100 unsafe intersections" in the State. Henson, an engineer with the Department's design consultant, KMA Consulting, discussed the final modified plan's directional restrictions imposed on vehicles while emphasizing the restrictions would not curb the existing "highly industrial" use of the property. Vena, an engineer from McCormick Taylor, KMA's sub-consultant for the resurfacing project, testified about the impact the traffic signal plans for the intersection would have on the property.

On behalf of Queen Realty, Nathan Mosley, a Shopshire partner, traffic engineer, and senior project manager, detailed his company's assessment of the plan and its alternative plan. Evaluating the traffic accident data of the intersection fronting the property, Mosely disputed the intersection as one of New Jersey's most dangerous intersections.

John Folkman, Queen Realty's vice president and Flexon's board chairman, testified about the impact the revised plan would have on the companies' business. He explained how preventing trucks and vehicles from turning left would cause major delays, increase business costs and create employee safety concerns and hardships.

After the administrative record closed, the Director denied Queen Realty's challenge and accepted the Department's final plan as consistent with the requirements of the Access Code and the State Highway Access Management Act (Act), N.J.S.A. 27:7-89 to -98. Specifically, the Director considered "whether the proposed modification of the [d]riveway [would] provide reasonable access to the general system of streets and highways in the State . . . and allow [the] continuation of the existing use on the lot or site." (citations and internal quotations marks omitted). The Director determined the decision must be "heard on the basis of criteria set forth in the [Act, Access Code], and the

6

evidence presented at the hearing[s]" because the modifications to Queen Realty's driveway were "in conjunction with the implementation of a [Department-approved] State highway improvement" changing the "width of the curb[]line opening of [Queen Realty's] driveway by more than five feet." N.J.A.C. 16:47-2.1[3] and -11.3(g).[4] He found, under N.J.A.C. 16:47-2.1, the Department's plan to change the "width of the curb[]line opening of [Queen Realty's] driveway by more than five feet" was not a revocation of the Queen

---

[3] N.J.A.C. 16:47-2.1, provides:

> "Adjustment of driveway" means changing the width of the curb[]line opening of a driveway by five feet or less, changing the location of a driveway by [ten] feet or less, moving a driveway away from the centerline of the State highway (such as when the State highway is widened), or changing the elevation or profile of a driveway, in conjunction with a State highway project advanced by the Department or others.

[4] N.J.A.C. 16:47-11.3(g), states:

> The Director will provide the written final agency decision to the lot or site owner or any access easement holder within 45 days of the closing of the record or remand the matter for further consideration by the access design unit. In reaching the final agency decision, the Director will consider the evidence presented at the hearing and the provisions of the State Highway Access Management Act and this chapter.

A-1580-22

Realty's access to Route 27, but a modification. He decided that while the elimination of left-hand turns makes it "less convenient and more time-consuming" for trucks to enter the property, the trucks could still "enter and exit through the modified [d]riveway," allowing manufacturing on the property to continue. The Director thus found "unsubstantiated" Queen Realty's contentions that the final plan would create "devastating hardships" on the property's existing use and its tenants' businesses.

Moreover, the Director determined the elimination of left turns "along with the installation of the concrete median and relocation of the [s]top bar[] [are] necessary to accomplish the purposes of . . . improv[ing] highway safety" and "provid[ing] congestion relief" along Route 27. The Director concluded the Department's "ultimate aim is to 'select[] a plan that will best achieve the overarching goal of providing reasonable access to the State's system of highways rather than maximizing [Queen Realty's] business interests.'"

The Director's decision was effectively the Department's final agency decision. Queen Realty appealed.

Initially, we quickly dispense of Queen Realty's contention that it was entitled to a contested hearing before the OAL. Under N.J.S.A. 52:14F-8(b), absent the agency's request, an ALJ is not permitted to hear contested cases when

"the head of the agency . . . [is] required to conduct, or determine to conduct the hearing directly and individually." Furthermore, N.J.S.A. 52:14F-7(a) places the authority to determine "whether a case is contested" in the "head of the agency." The Administrative Procedure Act, N.J.S.A. 52:14B-1 to -15, provides that the "'[h]ead of the agency' . . . includes the individual or group of individuals constituting the highest authority within any agency authorized or required by law to render an adjudication in a contested case." N.J.S.A. 52:14B-2.

Here, the Director, as "head" of the Division of Right of Way and Access Management, decides "whether to refer [the] matter to an ALJ, as well as the power to make the final decision on the merits." Allstars Auto Grp. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 161 (2018) (quoting In re Carberry, 114 N.J. 574, 584-85 (1989)). Applying the plain language of N.J.A.C. 16:47-11.3, which governs the appeals process for "modification of a driveway," the Director's decision not to refer the matter to the OAL was well within his authority as the head of the Division.

Before addressing the merits of Queen Realty's specific arguments, we discuss the principles governing our review. An agency action is arbitrary, capricious, or unreasonable if it violates the law, if the record does not contain

9

substantial evidence to support it, or if the agency's conclusion "could not reasonably have been [reached] on a showing of the relevant factors." In re Carter, 191 N.J. 474, 482-83 (2007) (citation omitted).

Thus, we make three inquiries: (1) whether the Department's "action violates express or implied legislative policies"; (2) whether the record contains substantial evidence to support the Department's findings; and (3) "whether in applying the legislative policies to the facts," the Department "erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors." Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995); see also In re Stallworth, 208 N.J. 182, 194 (2011); Carter, 191 N.J. at 482-83.

In the context of motor vehicle transportation, highway access is "within the specialized expertise of the [Department]," In re I/M/O Route 26 at New Amwell Rd., Block 161 (Hillsborough), 322 N.J. Super. 345, 357 (App. Div. 1999), and "[a] 'presumption of validity is afforded to the Department's plans and decisions in that domain," In re Route 66, 477 N.J. Super 22, 32 (App. Div. 2023). However, we are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue" and may review any questions of law de novo. Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973). When the Department makes changes to a property's access, it "bears

the burden of proving that the alternative access . . . is reasonable . . . and provides a convenient, direct, and well-marked route to enter the property and to return to the state highway." In re Revocation of Access of Block No. 613, Lots No. 4 & 5, Twp. of Toms River, Ocean Cnty., 224 N.J. 53, 56 (2016).

We now turn to the merits of Queen Realty's appeal. It maintains the final agency decision was arbitrary and capricious because the final plan denied it "reasonable access to the affected streets and highways and effectively preclud[ing] continuation of the" property's "existing use." It argues the Department failed to meet its burden in showing the final plan's alternative routes were reasonable because they involve multiple turns, which are "not very well lit," "poorly paved," and required drivers to commute through areas with "an unappealing crime rate" and "floods during heavy rain[]." Queen Realty also argues the Department's ruling was not supported by substantial credible evidence, and the opinions of the Department's experts lacked supporting data and did not rebut expert testimony by its expert. We are unpersuaded by these arguments.

N.J.A.C. 16:47-1.2(d) authorizes "[t]he Department [to] adjust, modify, or remove a driveway or a street that provides access to the State highway." See also N.J.A.C. 16:47-11.1 (permitting the Department to "adjust, modify, or

remove a driveway" to advance the Access Code's objectives).  Although the

Act does not define "modify" or "modification," the Access Code provides,

> "Modification of driveway" means changes to driveways in conjunction with the implementation of a State highway improvement advanced by the Department or others, with Department approval, which changes the number of driveways, <u>the width of the curb[]line opening of a driveway by more than five feet, or the location of a driveway by more than 10 feet.</u> It includes replacing all ingress or all egress between a State highway and a lot or site with ingress or egress via a private easement on a different lot or site; or <u>elimination of ingress, egress, or both between one State highway and a lot or site, while still providing ingress, egress, or both between a different State highway and the lot or site</u>.  Modification of driveway does not refer to changes made by a lot or site owner to his or her own driveway.
>
> [N.J.A.C. 16:47-2.1 (emphasis added).]

Moreover, N.J.A.C. 16:47-11.1(b)(2), similarly states:

> Modification of a driveway is:
>
> i. Changing the number of driveways, the width of a driveway by more than five feet, or the location of a <u>driveway by more than [ten] feet</u>;
>
> ii. Replacing all ingress to a lot or site from a State highway or all egress from a lot or site to a State highway with ingress or egress via a private easement between a State highway and a different lot or site; or
>
> iii. Eliminating ingress to a lot or site from a State highway, egress from a lot or site to a State highway,

12

or both, <u>while still providing ingress, egress, or both on a different State highway</u>[.]

[(Emphasis added).]

Whereas, revocation, under the Access Code, "means termination of an access permit by the Commissioner, when <u>all State highway access is removed</u> after a determination that alternative access will be available for use at the conclusion of the highway project." N.J.A.C. 16:47-2.1 (emphasis added).

Here, the final plan continues to allow access to the property to Route 27, albeit through northbound maneuvers. Thus, the Department correctly determined that the Route 27 driveway alterations constitute a modification, not a revocation of State highway access. See <u>In Re Route 66</u>, 477 N.J. Super. at 39 ("Because the Department's plan maintains . . . access to [the] State Highway 66 using a private easement, it literally satisfies the definition of 'modification.' . . . The plan therefore is not a revocation or a removal of access."); <u>see also In re I/M/O Route 206</u>, 322 N.J. Super. at 357 (holding there was no statutory revocation of access where one of the owner's driveways with highway access was being closed because the owner "retained some direct egress from and ingress to" the highway by way of the other proposed widened driveway). And because the Department's modification does not revoke Queen Realty's highway access, the Department is not obligated to determine whether its final plan is

more compliant with the Access Code than Queen's Realty's proposal. See In re Revocation of Access of Block No. 613, 224 N.J. at 56.

The Department's witnesses showed that the final plans provided for traffic to more safely ingress and egress the property prior to the revised traffic pattern. The property owner's "right of access is subject to regulation for the purpose of protecting the public health, safety and welfare." In re Route 66, 477 N.J. Super. at 32 (quoting N.J.S.A. 27:7-90(e)). The access rights of property owners "abutting a State highway must be held subordinate to the public's right and interest in a safe and efficient highway." Id. (quoting N.J.S.A. 27:7-90(g)). Its experts' testimony addressed the various alternative access alterations proposed by each party. Further, Shah, who was a fact witness, merely explained the Department's intent to improve the safety of the Route 27/Route 22 intersection. His testimony was amplified by Henson, who opined:

> If we're allowing a permitted left to happen at the intersection, the driver going north who could take a right, most likely taking a right to go. . . onto the ramp for [Route] 27 eastbound – [Route] 22 eastbound could think the guy's taking a left off of [Route] 27 southbound and is going on the ramp, but he's really going to the driveway, that's an accident. That's . . . a potential crash that could happen at that location because we have two vehicles trying to enter two different locations at the same location. Thus[,] that's why the [Route] 27 northbound movement onto the

ramp is a much safer option with the median and the
left turn movements removed.

Henson's conclusions were based on the Bureau's assessment that "a vehicle cannot cross three lanes of through traffic."

In sum, the Department's final plan was not arbitrary, capricious, or unreasonable. It promotes the safe flow of traffic for tractor trailers and much smaller motor vehicles in and out of the property. There is no credible evidence that the property will not be able to continue its current industrial use.

Any of Queen Realty's arguments that we have not addressed is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1580-22