**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4765-17T2

AMBA CORPORATION,
a Virginia Corporation,

      Plaintiff-Appellant,

v.

STATE OF NEW JERSEY,
by the COMMISSIONER OF
TRANSPORTATION,

      Defendant-Respondent.

_____

Argued January 13, 2020 – Decided July 24, 2020

Before Judges Messano, Vernoia and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-0673-17.

Drew K. Kapur argued the cause for appellant (Duane Morris LLP, attorneys; Drew K. Kapur, of counsel and on the briefs; Meredith E. Carpenter, on the briefs).

Alexander J. Falciani, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer,

Assistant Attorney General, of counsel; Alexander J. Falciani, of counsel and on the brief).

PER CURIAM

Plaintiff AMBA Corporation appeals from orders denying its motion for summary judgment on its inverse condemnation claim against defendant State of New Jersey, by the Commissioner of the Department of Transportation (DOT) and granting the DOT summary judgment on the claim. Having considered the record and the parties' arguments in light of the applicable law, we affirm.

I.

The facts presented in support of the cross-motions for summary judgment are not disputed. Plaintiff is the owner of real property and improvements, including a forty-six-room motel, in Bellmawr Township. Plaintiff's property is a highway-front lot that abuts the northeast side of Route 168.[1] Benigno Boulevard runs perpendicular to Route 168, intersects with Route 168 directly across from plaintiff's front lot line, and terminates at its intersection with Route 168.

---

[1] Route 168 is commonly referred to as Black Horse Pike.

Prior to the events giving rise to the inverse condemnation claim at issue here, a driveway on plaintiff's property provided access to and from Route 168.[2] The access to Route 168 was authorized by a DOT access permit.

In 2008, the DOT determined it was in the public interest to reconfigure the intersection of Route 168 and Benigno Boulevard to improve traffic flow in the vicinity. The DOT further determined the reconfiguration required termination of plaintiff's access permit to Route 168 through the existing driveway. Instead, access to Route 168 would be provided through an alternative and shared driveway over an easement on property owned by A.A. Hospitality, LLC (AAH) that abuts plaintiff's northern property line.[3]

The DOT's decision revoking plaintiff's existing access permit and modifying its access to Route 168 required compliance with the State Highway Access Management Act (the Act), N.J.S.A. 27:7-89 to -98, and its implementing regulations, the State Highway Access Management Code (the Code), N.J.A.C. 16:47-1.1 to -9.1. By letter dated March 7, 2008, the DOT notified plaintiff of the proposed access changes and provided a plan showing

---

[2] The driveway intersected with Route 168 just north of the intersection of Route 168 and Benigno Boulevard.

[3] A.A. Hospitality, LLC also owns and operates a motel located on, and with access to, Route 168.

3                                                                          A-4765-17T2

the existing and proposed access to Route 168. The letter informed plaintiff it had an opportunity to raise any issues or concerns about the access changes and advised plaintiff that a failure to respond within thirty days constituted a waiver of its right to a hearing concerning the changes. Plaintiff did not respond to the letter.

In January 2009, the DOT sent plaintiff another letter, noting its previous correspondence and providing an additional seven days to object to the proposed access plan. The DOT further advised that if plaintiff did not respond, the DOT would incorporate the proposed access changes into the design and construction of the Route 168 and Benigno Boulevard reconfiguration project.

In its brief on appeal, plaintiff explains that it did not respond to the DOT's letter "because it did not object to the alternative access" through an "easement over AAH's property." Plaintiff also acknowledges the DOT's proposed access plan "became final under the . . . Act" and its regulations.

On March 1, 2011, the DOT filed a condemnation action against plaintiff and took ownership of a portion of plaintiff's property abutting Route 168. The condemned property included the area where plaintiff's existing driveway accessed Route 168. The complaint did not seek condemnation of plaintiff's alternative reasonable access over AAH's property, but, eight days later, the

DOT filed a condemnation action against AAH and a declaration of taking, and thereby obtained an easement on AAH's property. The easement "consist[ed] of the permanent, nonexclusive right of ingress and egress for the owners, successors and assigns, as well as business invitees and guests of" plaintiff's abutting property. The easement encompassed those portions of AAH's property the DOT's access plan showed would provide the reasonable access to plaintiff's property necessitated by the revocation of plaintiff's access to Route 168 from its existing driveway.

Construction on the reconfiguration project began in September 2012, and in November the DOT contractor excavated in the area of plaintiff's existing driveway. Between September 2012 and November 2012, physical access to plaintiff's property was provided first through its existing driveway and, thereafter, through the driveway within the DOT's easement on AAH's property.[4] On November 16, 2015, the DOT recorded a deed conveying to plaintiff title to the easement across AAH's property.

Plaintiff later filed a complaint and an amended complaint for inverse condemnation. Plaintiff alleged that between September 12, 2012, and

---

[4] A December 14, 2017 "Stipulation" between plaintiff and the DOT states that from September 12, 2012 through November 12, 2012, access to plaintiff's property was provided "by way of" the existing driveway.

November 16, 2015, the DOT denied plaintiff its property right to reasonable alternative access without just compensation.

The DOT answered the complaints and subsequently moved for summary judgment, arguing the reasonable alternative access required by the Act was provided between September 12, 2012 and November 16, 2015, first through plaintiff's existing driveway and then through the shared driveway over the DOT's easement on AAH's property. The DOT contended access was provided in accordance with the access plan it presented to plaintiff prior to the condemnation of plaintiff's property; access was both "completed and available" as required by the Act, see N.J.S.A. 27:7-94(d); and, at all times, plaintiff's property had uninterrupted access to Route 168 through the shared driveway.

Plaintiff also moved for summary judgment. It did not dispute there was uninterrupted physical access available between its property and Route 168 between September 12, 2012, and November 16, 2015. Instead, it asserted reasonable alternative access was not "completed and available" within the meaning of the Act, see N.J.S.A. 27:7-94(d), because it did not have a legally enforceable right to reasonable access across AAH's property until the DOT conveyed and recorded the November 16, 2015 deed of easement.

After hearing argument, the motion judge found there were no genuine issues of material fact and noted plaintiff "has the burden of production and the burden of proof to establish a taking by clear and convincing evidence." The court noted plaintiff's "basic complaint is that the State did not file the easement" on AAH's property in plaintiff's "name . . . for . . . [thirty-eight] months and, therefore, [plaintiff] had no legal right to traverse the property and, therefore, [reasonable alternative access] was not full and complete."

The court found plaintiff's claim turned on an interpretation of N.J.S.A. 27:7-94(d), which provides that an access permit shall not be revoked "[u]ntil the alternative access is completed and available for use." The court reasoned the statute's "clear language" "indicate[s] that [reasonable alternative access] is full and available for use" when physical access to the property is provided and maintained. The court found compliance with N.J.S.A. 27:7-94(d) did not require delivery of the deed of easement but instead required only that plaintiff's property have physical access to Route 168. The court also determined:

> The undisputed facts are that the State got an easement on the neighboring property owned by [AAH], provided access to plaintiff's property, specifically the hotel, before closing the highway access directly to plaintiff's property. Nothing in the record would indicate that any customers or use of the property was affected.

A-4765-17T2

Although plaintiff's cause of action is based solely on an alleged taking without just compensation of its right to reasonable access, the court also determined there was no physical or regulatory taking of plaintiff's fee interest in its property. The court found there was no "permanent physical occupation" of plaintiff's property, and any "alleged interference [with plaintiff's fee interest] was temporary, approximately [thirty-eight] months at most." The court found plaintiff's "ability to use and make investments has never been curtailed" by the DOT, and "it is undisputed that plaintiff continued to occupy the [motel] between 2012 and 2015, the period of time during which plaintiff claims there was a taking for which it seeks compensation." The court further reasoned that "[b]ecause the State did not substantially destroy the beneficial use of plaintiff's property, there's [also] no 'regulatory taking.'"

The court entered orders granting the DOT summary judgment and denying plaintiff's summary judgment motion. Plaintiff appeals from the court's orders.

## II.

We review orders granting or denying summary judgment by applying the same standard as the trial court in its ruling on a summary judgment motion. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224

N.J. 189, 199 (2016). The moving party is entitled to summary judgment if the record shows "there is no genuine issue as to any material fact challenged and . . . the moving party is entitled to a judgment or order as a matter of law." Ibid. (quoting R. 4:46-2(c)). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995). Issues of law are subject to the de novo standard of review, and the trial court's determination of such issues is accorded no deference. Kaye v. Rosefielde, 223 N.J. 218, 229 (2015).

Prior to addressing plaintiff's claims, we note it does not challenge the DOT's condemnation of its fee interest in its property or the DOT's access plan. Plaintiff does not claim a violation of the Act or any error in the DOT's adoption of the access plan that provided for revocation of the access permit for the existing driveway and reasonable alternative access through an easement on AAH's property.[5] Plaintiff also does not claim its property was deprived of actual physical access to Route 168 between September 12, 2012, and November

---

[5] A challenge to the DOT's access plan required exhaustion of administrative remedies before the Commissioner of the DOT. See State ex rel. Comm'r of Transp. v. Marlton Plaza Assocs., LP, 426 N.J. Super. 337, 348-50 (App. Div. 2012) (explaining the procedure for appealing the revocation of an access permit). As noted, plaintiff never challenged the plan.

16, 2015. Plaintiff argues only the DOT took its property right to reasonable alternative access without just compensation by failing to convey legal title to the easement over AAH's property until November 16, 2015.

The Fifth Amendment to the United States Constitution provides that "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V. This provision has been made applicable to the states through the Due Process clause of the Fourteenth Amendment. Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 536 (2005). The New Jersey Constitution, article I, paragraph 20, and article IV, section 6, paragraph 3, also protects against governmental takings of private property without just compensation, and its protections are coextensive with that of the federal provision. Klumpp v. Borough of Avalon, 202 N.J. 390, 404-05 (2010).

The United States Supreme Court has identified two "narrow categories" of regulatory actions that are "deemed per se takings for Fifth Amendment purposes." Lingle, 544 U.S. at 538; see also Marlton Plaza, 426 N.J. Super. at 352-53. "The first is 'where government requires an owner to suffer a permanent physical invasion of [its] property,'" and "[t]he second 'applies to regulations that completely deprive an owner of all economically beneficial use of [its]

property.'" Marlton Plaza, 426 N.J. Super. at 353 (quoting Lingle, 544 U.S. at 538).

Where an alleged taking does not fall within one of the two narrow categories of per se takings, "regulatory takings challenges are governed by the standards set forth in Penn Central [Transportation] Co. v. New York City, 438 U.S. 104, (1978)." Lingle, 544 U.S. at 538; see also Marlton Plaza, 426 N.J. Super. at 353. The United States Supreme Court summarized the Penn Central analysis as follows:

> [W]hen a regulation impedes the use of property without depriving the owner of all economically beneficial use, a taking still may be found based on "a complex of factors," including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action.
>
> [Murr v. Wisconsin, 137 S. Ct. 1933, 1943 (2017) (citation omitted).]

A property owner must establish more than "lost economic opportunities, forgone financing, and diminution in market value" to satisfy the economic impact prong. Littman v. Gimello, 115 N.J. 154, 164 (1989). The owner must demonstrate the regulation "'substantially destroys the beneficial use of private property,' or does not allow an 'adequate' or 'just and reasonable' return on

A-4765-17T2

investment." Karam v. Dep't of Envtl. Prot., 308 N.J. Super. 225, 236 (App. Div. 1998) (quoting Gardner v. N.J. Pinelands Comm'n, 125 N.J. 193, 211 (1991)).

In addition, the property owner's investment-backed expectations must be reasonable. E. Cape May Assocs. v. Dep't of Envtl. Prot., 300 N.J. Super. 325, 337 (App. Div. 1997). "Whether or not expectations are considered reasonable will depend to a significant extent on whether the property owner had notice in advance of its investment decision that the governmental regulations which are alleged to constitute the taking had been or would be enacted." Ibid.

The nature of the government action must also be considered. Marlton Plaza, 426 N.J. Super. at 353. "[T]aking challenges have been dismissed 'on the ground that, while the challenged government action caused economic harm, it did not interfere with interests that were sufficiently bound up with the reasonable expectations of the claimant to constitute "property" for Fifth Amendment purposes.'" Id. at 354 (quoting Penn Cent., 438 U.S. at 124-25).

It is fundamental that the proponent of a takings claim must possess a "property interest" cognizable under the Fifth Amendment. Phillips v. Wash. Legal Found., 524 U.S. 156, 164 (1998) (applying the definition of "property" developed in due process cases to takings cases). It is also well-established that,

even though the interest "may take many forms over and above the ownership of tangible property," Nicoletta v. N. Jersey Dist. Water Supply Comm'n, 77 N.J. 145, 154 (1978), the range of protected property interests is not limitless, Bd. of Regents v. Roth, 408 U.S. 564, 570-72 (1972). The determinative question is whether the claimant possesses a "legitimate claim of entitlement," not merely an "abstract need or desire" or "unilateral expectation," in the interest. Id. at 577. These entitlements "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Ibid.

State law defines a plaintiff's right to reasonable access to a State highway. Marlton Plaza, 426 N.J. Super. at 355; see also N.J.S.A. 27:7-90(e). The Act "delegate[s] authority over State highway access to the DOT." In re IMO Route 206 at New Amwell Road, Block 161 (Hillsborough), 322 N.J. Super. 345, 353 (App. Div. 1999).

"[A] property owner has a right of reasonable access to the State's highway system," but not from a "particular point on his or her property." Marlton Plaza, 426 N.J. Super. at 355; see also N.J.S.A. 27:7-90(e) ("The right of access is subject to regulation for the purpose of protecting the public health, safety and welfare."). "Thus, modification or revocation of an access point, so long as free

and reasonable access remains, does not constitute a taking" for Fifth Amendment purposes.  Marlton Plaza, 426 N.J. Super. at 355.

There is a constitutional taking of the right to reasonable access where the DOT revokes a property owner's access permit but does not otherwise provide free and reasonable access from the property to the State highway.  "[I]f the access that remains following DOT regulation is not reasonable, the property owner's Fifth Amendment rights are implicated," and, under those circumstances, the Act "and the common law, require that the [DOT] acquire the property interest [to reasonable access] through condemnation."  Id. at 356 (citation omitted); see also Magliochetti v. State by Comm'r of Transp., 276 N.J. Super. 361, 371 (Law Div. 1994) (explaining that "[i]n lieu of providing reasonable alternative access when revoking a permit, 'the commissioner may acquire, by purchase or condemnation, any right of access to any highway . . . .'").

The Act permits the revocation of an existing access permit, such as plaintiff's permit to access Route 168 from its existing driveway, but not "[u]ntil the alternative access is completed and available for use."  N.J.S.A. 27:7-94(d). Plaintiff claims alternative access across the easement on AAH's property was not "completed and available" as required by N.J.S.A. 27:7-94(d) until the DOT

deeded the easement on November 16, 2015.  Plaintiff's argument is founded on a flawed interpretation of the Act.

"When construing a statute, our primary goal is to discern the meaning and intent of the Legislature.  In most instances, the best indicator of that intent is the plain language chosen by the Legislature."  State v. Gandhi, 201 N.J. 161, 176 (2010) (citation omitted); accord DiProspero v. Penn, 183 N.J. 477, 492 (2005).  Determining the Legislature's intent, "begins with the language of the statute, and the words chosen by the Legislature should be accorded their ordinary and accustomed meaning."  State v. Hudson, 209 N.J. 513, 529 (2012).  N.J.S.A. 1:1-1 requires that "[i]n the construction of [our] laws and statutes, . . . words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the [L]egislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language."

Where a statute's language "leads to a clearly understood result, the judicial inquiry ends without any need to resort to extrinsic sources."  Hudson, 209 N.J. at 529.  Courts may "resort to extrinsic evidence" if the legislation is ambiguous and susceptible to more than one interpretation, DiProspero, 183 N.J. at 492-93, however, a court should not "rewrite a plainly-written

15

enactment . . . or presume that the [drafter] intended something other than that expressed by way of the plain language," id. at 492. "It is not our job to engraft requirements [on a statute] that the Legislature did not include. It is our role to enforce the legislative intent as expressed through the words used by the Legislature." Lippman v. Ethicon, Inc., 222 N.J. 362, 388 (2015).

By its plain terms, N.J.S.A. 27:7-94(d) requires alternative access be completed and available "for use" prior to the revocation of an existing access permit. The phrase "for use" modifies the terms "completed and available." The standard for the completion and availability requirements is defined simply but solely in terms of the utility of the alternative access. That is, for alternative access to satisfy the statute, the access must be completed "for use" and available "for use."

This interpretation is not only required by the unambiguous language of N.J.S.A. 27:7-94(d), it is consistent with N.J.S.A. 27:7-94(c), which defines alternative access under the Act. N.J.S.A. 27:7-94(c) provides that "alternative access shall be assumed to exist if the property owner enjoys reasonable access to the general system of streets and highways in the State." For commercial property, reasonable access also requires "access onto any parallel or perpendicular street, highway, easement, service road or common driveway,

A-4765-17T2

which . . . support[s] commercial traffic to the business or use" and provides "a convenient, direct, and well-marked means of both reaching the business or use and returning to the highway." N.J.S.A. 27:7-94(c)(1) (emphasis added). The Code identically defines the requirements for alternative access following the revocation of existing access from a driveway. See N.J.A.C. 16:47-11.4(c).

Our Supreme Court has explained that N.J.S.A. 27:7-94(c) "establish[es] two criteria for reasonable access" to commercial property. In re Revocation of Access of Block No. 613, Lots No. 4 & 5, Twp. of Toms River, Ocean Cty., 224 N.J. 53, 67 (2016). "First, there must be direct access to a street, highway, or service road" and "if improvements alter the route that patrons must take to gain access to the commercial property, the new route must be able to 'support the traffic to the business' and must be convenient, direct, and well-marked."[6] Ibid.; see also In re Revocation of Access of Block 1901, Lot No. 1, Borough of Paramus, 324 N.J. Super. 322, 336-40 (App. Div. 1999) (finding reasonable alternative access is established where the requirements on N.J.S.A. 27:7-94(c) are satisfied). Where such access is provided, the DOT satisfies its obligation to provide reasonable alternative access under the Act. See Revocation of

---

[6] The Court noted the DOT is also required to "design and install appropriate signage marking the alternative route to the property." Ibid. (citing N.J.S.A. 27:7-94(d)).

Access of Block No. 613, 224 N.J. at 67-69 (finding the DOT satisfied the requirements of N.J.S.A. 27:7-94(c) and provided reasonable access under the Act where the DOT "designed a route that [led] directly to" the plaintiff's property and "provid[ed] direct access to the . . . property").

The undisputed facts establish that at all times between September 12, 2012 and November 16, 2015, the DOT provided plaintiff's property with access—through the existing driveway and then through the shared driveway—to and from Route 168. Plaintiff does not argue otherwise. Based on those facts, we find, as did the motion court, the reasonable access required under the Act was "completed and available for use" within the plain meaning of N.J.S.A. 27:7-94(d). As a matter of fact and law, the DOT therefore did not deprive plaintiff of its right to reasonable access to Route 168 at any time relevant to its inverse condemnation claim.

Plaintiff seeks refuge from the Act's plain language and requirements defining the right to reasonable access, arguing that despite the DOT's provision of uninterrupted access to its property over the existing driveway and shared driveway, a taking without just compensation occurred because the DOT did not convey title to the easement over AAH's property for more than three years. Plaintiff claims that prior to the November 16, 2015 deed of easement, the DOT

18

held plaintiff's title to the easement and, by doing so, took plaintiff's property interest in reasonable access without just compensation.

Plaintiff's argument ignores that the Act requires only the provision of reasonable access and imposes no obligation to provide reasonable access by deeding title to an easement through which the reasonable access is provided. Plaintiff's inverse condemnation claim and arguments on appeal are founded solely on an alleged taking without compensation of its right to reasonable access and, as we have explained, there was never a time plaintiff was denied the reasonable access required under the Act.

The Act and Code make express provision for the use of an easement to provide the required reasonable access, but they do not require transfer of title to the easement to the property owner for the provision of reasonable access. N.J.S.A. 27:7-94(c)(1); N.J.A.C. 16:47-11.4(c)(1). To the contrary, they provide only that reasonable access for commercial properties must include, where appropriate, "the use of [an] . . . easement." Plaintiff does not point to any provision of the Act requiring the DOT deliver a deed of easement to a property owner, and it is not our role to write into the statute a requirement the Legislature chose not to include. Lippman, 222 N.J. at 388.

Plaintiff also does not claim the DOT's access plan, which plaintiff accepted without objection, required delivery of a deed of easement to plaintiff for the shared driveway on AAH's property. The access plan materials included in the record show an easement for the shared driveway on AAH's property, but the plan does not include any discernable requirement the DOT transfer title of the easement to plaintiff. And plaintiff makes no claim the DOT breached the conditions of the plan by failing to provide a deed to the easement. Additionally, if plaintiff believed the plan failed to provide reasonable access because it did not include a requirement the DOT deed the easement, it was required to object to the plan when it was offered, on two separate occasions, the opportunity to do so. See generally Marlton Plaza, 426 N.J. Super. at 348-50.

We therefore find no support in the law or the DOT's access plan for the premise underlying plaintiff's claim—that its right to reasonable access included an entitlement to delivery of a deed to the easement across AAH's property. Moreover, plaintiff's claim it was deprived of reasonable access without the deed because it lacked the legal authority to use the shared driveway is wholly undermined by the record.

The DOT provided uninterrupted access to Route 168 through "use of" its easement, which vested plaintiff with legal authority to use the shared driveway

as the means of reasonable access. The easement makes express provision for plaintiff's physical access to the shared driveway, authorizing its use for the ingress and egress of plaintiff's "owners, successors and assigns, as well as business invitees and guests." Plaintiff's claims it had no legal right to use the easement; it was a trespasser while using the easement prior to the deed of easement; and it had no legally available access to its property across the easement are contradicted by the easement's plain language.

Plaintiff argues the DOT's easement was for the DOT's use and benefit and therefore did not provide plaintiff with a legal right to use the shared driveway. For the reasons noted, we reject the claim plaintiff did not have a legal right to use the shared driveway pursuant to the DOT's easement that expressly authorized that use. The Act required the DOT provide plaintiff with "all necessary assistance . . . in establishing the alternative access," N.J.S.A. 27:7-94(d), authorized the DOT to "acquire access easements to provide alternative access," N.J.S.A. 27:7-97, and allowed for the use of an easement for "access onto" a State highway, N.J.S.A. 27:7-94(c)(1). That is precisely what the DOT did here. It obtained an easement that provided plaintiff with the lawful authority to use the shared driveway as the means of reasonable alternative access to Route 168.

21

Plaintiff also contends it lacked the legal authority to use the shared driveway because the DOT had the authority to revoke the easement it obtained from AAH. We reject the argument for two reasons. First, the DOT never revoked the easement, and plaintiff was never deprived of the legal authority the easement expressly provided. Second, DOT revocation of the easement would have violated the access plan, which plaintiff had the legal authority to enforce, and any interruption of the reasonable access required under the plan and the Act would have given rise to a takings claim. See Marlton Plaza, 426 N.J. Super. at 356. There were no such occurrences here, and even if there were, plaintiff had a legally enforceable right to compel compliance with the access plan, which required and permitted access through the easement.

We do not suggest the DOT is prohibited from transferring title to an easement to a property owner that allows the owner's use of the easement for reasonable alternative access across another's property, or that it might not, for many reasons, be advisable for it to do so. In November 2015, the DOT chose to do so here. We find, however, that under the circumstances presented, transfer of title to the easement was not required for the reasonable access defined by, and required under, the Act, and plaintiff's claimed right to a deed

to the easement was not required under the Act or the access plan it accepted without objection.

Plaintiff's property right to reasonable access is defined by State law, the Act, Marlton Plaza, 426 N.J. Super. at 355-56, and, for the reasons we have explained, the undisputed facts establish the DOT provided plaintiff with the reasonable access prescribed by the statute. Where the DOT provides a property owner with the requisite reasonable access in accordance with the Act by obtaining an easement and allowing for its use by the property owner, and by providing uninterrupted physical access to the property across the easement, the property owner suffers no taking of its right to reasonable access, and its Fifth Amendment rights are not implicated.[7] See Marlton Plaza, 426 N.J. Super. at 355-56. Plaintiff claims only a taking of his right to reasonable access, and he suffered no taking of that right here.

Plaintiff's inverse condemnation claim is founded on a purported property right—to a transfer by deed of title to the DOT's easement—that is not included within the right to reasonable access defined and required by the Act, was not required by the access plan, and for which plaintiff otherwise fails to identify

_____

[7] To provide reasonable access, the DOT must also satisfy other conditions not at issue here. See N.J.S.A. 27-7(c) and (d); N.J.A.C. 16:47-11.1 and -11.4.

any legal entitlement under State law. Lacking any legal entitlement to the purported property right upon which its claim is exclusively based, plaintiff's taking claim fails as a matter of law. See Phillips, 524 U.S. at 164; see also Singer v. Twp. of Princeton, 373 N.J. Super. 10, 21-22 (App. Div. 2004) (determining "there is no cognizable property right" in feeding wild deer and therefore "any regulatory or legislative limitation or qualification placed on that right would not constitute an unlawful taking of property or otherwise impair a protected property interest"). We therefore affirm the court's grant of summary judgment on plaintiff's inverse condemnation claim based on the alleged taking of its right to reasonable access without just compensation, and we affirm the court's order denying plaintiff summary judgment.

Although unnecessary to our determination, we also observe that even assuming plaintiff had a property interest in the deed of easement as a condition of the DOT's provision of reasonable access, the record establishes that any delay in delivering the deed prior to November 16, 2015, while uninterrupted reasonable access was provided through the use of the DOT's easement, did not cause plaintiff to suffer either a "permanent physical invasion of," or "completely deprive [plaintiff] of all economically beneficial use of," its right of reasonable access. Marlton Plaza, 426 N.J. Super. at 353 (quoting Lingle,

544 U.S. at 538). There are similarly no facts supporting a conclusion that any purported delay in the delivery of the deed constituted a regulatory taking of plaintiff's right to reasonable access under the <u>Penn Central</u> standard. <u>See</u> <u>Murr</u>, 137 S. Ct. at 933.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4765-17T2