731 A.2d 56 (1999)
322 N.J. Super. 345
In re I/M/O ROUTE 206 AT NEW AMWELL ROAD, BLOCK 161, LOT 13B (HILLSBOROUGH).
Superior Court of New Jersey, Appellate Division.
Argued May 10, 1999.
Decided June 23, 1999.
*58 Paul Tannenbaum, for appellant Getty Realty Corporation (Peter J. Zipp, attorney, Jamesburg).
Linda Lasus, Deputy Attorney General, for respondent, State of New Jersey, Department of Transportation (Peter Verniero, Attorney General; Joseph L. Yannotti, Assistant Attorney General, of counsel).
Before Judges PETRELLA and COLLESTER.
*57 The opinion of the court was delivered by PETRELLA, P.J.A.D.
Getty Realty Corporation[1] (Getty) appeals a February 20, 1998 letter decision by the Director of the Division of Design Services (Division) in the New Jersey Department of Transportation (DOT). The decision states it "constitutes the final agency decision" of the DOT modifying State highway access to the Getty-brand service station on Route 206 pursuant to the State Highway Access Management Act, N.J.S.A. 27:7-89 to 27:7-98 (L. 1989, c. 32, § 11, approved February 23, 1989), and its implementing regulations. See N.J.A.C. 16:47-4.33(c).
Getty argues on its appeal that the DOT's decision warrants reversal because it applied the wrong legal standard in reaching its final determination. In addition, Getty argues that the DOT's proposed modification of access does not provide its customers with reasonable and convenient access to Route 206 under the revocation procedures of N.J.S.A. 27:7-94, and that the regulation relied upon by the DOT in support of its determination is ultra vires. Getty also argues that if the DOT desires to modify existing access to Route 206, it must provide the necessary assistance to allow Getty's customers to maintain reasonable access to Route 206. In making its argument, however, Getty "does not dispute that the [DOT's] authority to revoke access includes the authority to modify access."
The property in question is located on the southbound side of Route 206 in Hillsborough, Somerset County, and is improved with a Getty-brand service station with two existing driveways fronting Route 206. The northerly of these two driveways is forty-five feet wide and provides both ingress and egress to the site. The southerly driveway, which is thirty-seven feet wide, is for egress only. A fuel island is located on the property between and parallel to the two driveways on Route 206. There is also a third existing twenty-five foot wide driveway on New Amwell Road that is used for both ingress and egress purposes.
*59 By an August 7, 1997 letter, the DOT advised the property owner that it would be constructing improvements to Route 206 and, as part of the improvements, closing the southerly driveway on Route 206, one of two existing egresses fronting Route 206. The reason given for the closing was that the southerly egress was in violation of an edge clearance regulation, N.J.A.C. 16:47-3.8(c), and a corner clearance at signalized intersection regulation, N.J.A.C. 16:47-3.8(k)3.
The DOT's proposal was to eliminate the southerly driveway on Route 206 that was in violation and widen the northerly driveway on Route 206 to sixty-one feet to make it more suitable for two-way traffic. In addition, the driveway on New Amwell Road would be widened on its north end, but not its south end that meets New Amwell Road. The DOT acknowledged that the proposed widening of the northerly driveway fronting Route 206 would require a waiver of edge clearance regulation, N.J.A.C. 16:47-3.8(c). A copy of the plan that showed the existing and proposed driveway configurations was attached to the DOT letter, as well as information about the appeals process under the regulations if the property owner objected to the proposed plan.
After receiving notice of the DOT's proposed modification, Getty indicated that it would be appealing the DOT's modification project on behalf of itself and the property owner under the appeals process outlined in the DOT's letter. See N.J.A.C. 16:47-4.33(c)4. An informal meeting with the DOT's Manager of the Bureau of Civil Engineering (Manager) was scheduled pursuant to N.J.A.C. 16:47-4.33(c)5. At this meeting Getty was represented by counsel and the DOT indicated that it would be willing to make aesthetic improvements after closing the southerly driveway if allowed to enter onto the property.
After a series of written and oral communications, the DOT was ultimately not given permission to enter the subject property to do the proposed modifications. Despite the lack of permission, the DOT took the position that it could still implement its project. However, as a result of the dispute, the DOT took the intransigent position that it would not implement either the aesthetic improvements to the closed southerly driveway fronting Route 206 or the proposed changes to New Amwell Road.
Getty eventually requested that the proposed modification of access be treated as a revocation of access, or alternatively, that another informal meeting be scheduled in compliance with N.J.A.C. 16:47-4.33(c)5. Both requests were denied by the DOT. Getty then chose the only alternative remaining and requested an informal hearing with the Director pursuant to N.J.A.C. 16:47-4.33(c)6.
On January 22, 1998, at the informal hearing, Getty presented sworn testimony of Daniel Disario, a traffic engineer. Disario described the existing configuration of the service station as a parallel arrangement relative to Route 206. According to Disario, this design was intended to allow a motorist to enter the site from the northerly Route 206 driveway, enter the fueling area, and exit the site on the southerly driveway back to Route 206. Disario testified that if access is modified as planned by the DOT, this traffic pattern will no longer exist. Instead, Disario stated, that motorists who enter the site from the northerly driveway and desire to return to Route 206 will have to make a u-turn movement on the site, which he opined is neither convenient nor safe.
As for the alternate egress that remained at New Amwell Road, Disario opined that the New Amwell Road driveway was not a practical exit for customers wishing to return to Route 206. According to Disario, motorists exiting this driveway will have to cross two lanes of traffic on New Amwell Road in order to return to Route 206.
*60 Disario's remedy was to shift the proposed ingress/egress driveway closer to the intersection, which would run afoul of both corner clearance and exclusive lane access prohibitions, and to redo the entire station to make the fueling pumps perpendicular to the State highway. However, even under Disario's alternate plan, motorists entering the site would have effectively the same two choices to make as with the DOT's proposed plan: either make a u-turn and exit using the northerly State highway driveway or use the New Amwell Road exit.
The Director's "final agency decision" concluded that based on "all of the documents in the Department's files, as well as the testimony" presented at the hearing, "while the proposed modification of access will affect a change to the circulation pattern within the site, the modification will not prevent the continued use of the site as a service station." The DOT's proposed modification was scheduled to proceed.
Generally, an agency regulation is "presumptively valid," and, therefore, the party challenging it bears the burden of proving its invalidity. Medical Soc'y v. Dept. of Law & Pub. Safety, 120 N.J. 18, 25, 575 A.2d 1348 (1990). Regulations that exceed the Legislature's grant of authority are deemed ultra vires. An ultra vires finding is strongly disfavored, and is made only in exceptional circumstances. City of Newark v. Natural Resource Council, 82 N.J. 530, 539, 414 A.2d 1304, cert. denied, 449 U.S. 983, 101 S.Ct. 400, 66 L.Ed.2d 245 (1980). In considering the grant of authority, courts look to the "fair contemplation" of the delegation by the enabling statute. New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561-562, 384 A.2d 795 (1978). And while a regulation cannot "alter the terms of a statute or frustrate the legislative policy," courts place great weight on the interpretation of legislation by the administrative agency charged with enforcing it. Medical Soc'y v. Dept. of Law & Pub. Safety, supra (120 N.J. at 25-26, 575 A.2d 1348).
In deciding whether a particular regulation is statutorily authorized, a court "may look beyond the specific terms of the enabling act to the statutory policy sought to be achieved by examining the entire statute in light of its surroundings and objectives." New Jersey Guild of Hearing Aid Dispensers v. Long, supra (75 N.J. at 562, 384 A.2d 795). In this manner the court considers whether the requisite authority is implied, if not expressed. Ibid. Furthermore, declarations of public policy in enabling legislation can serve to illuminate sources of statutory authorization for regulations aimed at pursuing that policy. In Review of Health Care Admin. Bd. v. Finley, 168 N.J.Super. 152, 162, 402 A.2d 246 (App.Div.1979), aff'd, 83 N.J. 67, 415 A.2d 1147 (1980), cert. denied, 449 U.S. 944, 101 S.Ct. 342, 66 L.Ed.2d 208 (1980). This is especially true where policy is expressed in broad terms. Ibid.
Although administrative discretion may be limited by the declared legislative policy and the means provided by the lawmakers toward that end, it is nonetheless "inclusive of such authority as is by fair implication and intendment incident to the agency's essential function and purpose[.]" Swede v. City of Clifton, 22 N.J. 303, 312, 125 A.2d 865 (1956). An administrative agency's peculiar knowledge may increase the latitude given it in exercising its delegated discretion. DeCamp Bus Lines v. Dept. of Transportation, 182 N.J.Super. 42, 50, 440 A.2d 32 (App.Div. 1981).
Through the State Highway Access Management Act, N.J.S.A. 27:7-89 to 27:7-98 (the Act), the Legislature delegated authority over State highway access to the DOT. In the Act's legislative findings and declarations the Legislature recognized that "[t]he purpose of the State highway system is to serve as a network of principal arterial routes for the safe and efficient movement of people and goods in the major travel corridors of the State." N.J.S.A. 27:7-90a. In recognizing the *61 need to protect this public asset, the Legislature declared that "[t]he State has a public trust responsibility to manage and maintain effectively each highway within the State highway system to preserve its functional integrity and public purpose for the present and future generations." N.J.S.A. 27:7-90c. In accordance with these goals, the Legislature noted that "[t]he access rights of an owner of property abutting a State highway must be held subordinate to the public's right and interest in a safe and efficient highway." N.J.S.A. 27:7-90g.
The Act provides in N.J.S.A. 27:7-92a that "any person seeking to construct or open" access to a State highway "shall first obtain an access permit from the commissioner."[2]N.J.S.A. 27:7-92b provides:
b. Every access permit, including street opening permits, in effect on the effective date of this amendatory and supplementary act [L. 1989, c. 32] shall remain valid and effective until revoked or replaced.
Moreover, N.J.S.A. 27:7-92c addresses "grandfathered" permits and provides that any driveway in existence prior to January 1, 1970 is presumed to have been constructed in accordance with an access permit. By regulation the DOT extended the grandfathering period to July 1, 1976 and specifically provided that "Grandfathered permits are subject to the same regulations as actual permits." N.J.A.C. 16:47-1.1. Here, the DOT acknowledged that Getty had a grandfathered permit, but rejected the claim that the permit could not be modified. We agree.
When access to the State highway is revoked, the DOT is responsible for providing all necessary assistance to the property owner in establishing the alternative access, including the funding of any such improvements by the DOT. N.J.S.A. 27:7-94d. The Legislature, recognizing that revocation of State highway access is a potentially significant event, provided detailed standards for what constitutes reasonable alternative access. N.J.S.A. 27:7-94c. The reasonable alternative access standards in N.J.S.A. 27:7-94c(1), however, imply total revocation of State highway access. Reasonable alternative access for property zoned or used for commercial purposes is
access onto any parallel or perpendicular street, highway, easement, service road or common driveway, which is of sufficient design to support commercial traffic to the business or use, and is so situated that motorist have a convenient, direct, and well-marked means of both reaching the business or use and returning to the highway.

[N.J.S.A. 27:7-94c(1).]
Although this is a close case, these standards lead us to conclude in this case that revocation refers to the loss of direct access to the State highway and the relocation of access onto other than the same State highway. That is not the case in the present highway improvement. Here, Getty has retained some direct egress from and ingress to Route 206.
In managing the State's highways, N.J.S.A. 27:7-91a requires the Commissioner of the DOT to adopt a State highway access management code to regulate access to State highways. Under the statutory grants of authority, the DOT adopted the State Highway Access Management Code, N.J.A.C. 16:47-1.1 to 16:47-9.1 (Access Code), effective April 20, *62 1992, which contains the DOT's regulations for managing access to the State highway system. The Access Code was readopted, effective March 13, 1997, with changes, including the modification appeals procedures utilized by the DOT in the instant matter.[3]
In accordance with the Access Code, modifications of access are restricted:
to changing the number of access points, changing the width of an access point by more than five feet (1.5 meters), or changing the location of an access point by more than 10 feet (three meters). The changes shall be in accordance with the requirements of N.J.A.C. 16:47-3.4, 3.5 and 3.8. The modifications shall enable continuation of the apparent existing use on the lot.

[N.J.A.C. 16:47-4.33(c)7.]
When the DOT initiates a highway project that modifies access, the regulations require the DOT to notify each lot owner in writing of the proposed access modification and provide the lot owner with a plan showing the modification prior to beginning construction. N.J.A.C. 16:47-4.33(c)2. The lot owner is provided with thirty days from receipt of the DOT's notice to advise the DOT whether it accepts the modification plan or intends to appeal the administrative decision. N.J.A.C. 16:47-4.33(c)4. In the event an administrative appeal is filed, the Manager of the Bureau of Civil Engineering must schedule an informal meeting with the property owner to resolve any differences. Thereafter, the Manager is required to issue a written decision within thirty days. In the event of disagreement with that decision, the property owner has an additional thirty days to appeal to the Director who must then schedule an informal hearing within ten days. N.J.A.C. 16:47-4.33(c)5. At this informal hearing, the property owner is given an opportunity to present further information regarding objections to the modification plan. N.J.A.C. 16:47-4.33(c)6. Within thirty days of the informal hearing, the Director's written "final agency decision" is required to be issued, in which the Director shall:
consider the information presented at the hearing and the recommendation of the hearing officer if designated and the criteria set forth in the Act and these regulations, the lot owner's right of reasonable access to the general system of streets and highways in the State and the public's right and interest in a safe and efficient highway system.

[N.J.A.C. 16:47-4.33(c)7.]
In establishing regulations for modification of existing State highway access, the DOT has reasonable discretion in developing methodology to fulfill its statutory obligation. See Dougherty v. Human Services Dept., 91 N.J. 1, 6, 449 A.2d 1235 (1982); Texter v. Human Services Dept., 88 N.J. 376, 383, 443 A.2d 178 (1982). Generally, because highway access management is within the specialized expertise *63 of the DOT, its actions are accorded deference. See, e.g., DeCamp Bus Lines v. Dept. of Transportation, supra (182 N.J.Super. at 50, 440 A.2d 32); Tp. of Hopewell v. Goldberg, 101 N.J.Super. 589, 597, 245 A.2d 67 (App.Div.), certif. denied, 52 N.J. 500, 246 A.2d 457 (1968).
An administrative agency has broad discretion to exercise its statutory authority "either by adjudication or rulemaking," and enjoys "a great deal of flexibility in selecting the proceedings most likely to achieve their regulatory aims." State of New Jersey, Department of Environmental Protection v. Stavola, 103 N.J. 425, 436-437, 511 A.2d 622 (1986). Moreover, a court should not substitute its judgment regarding the wisdom of an administrative action for the judgment of the agency as long as the action is statutorily authorized and reasonable. K.P. v. Albanese, 204 N.J.Super. 166, 176, 497 A.2d 1276 (App.Div.), certif. denied, 102 N.J. 355, 508 A.2d 225 (1985). Cf. IFA Ins. Co. v. New Jersey Dept. of Ins., 195 N.J.Super. 200, 208, 478 A.2d 1203 (App.Div.), certif. denied, 99 N.J. 218, 491 A.2d 712 (1984).
The case before us presents a close question. Here, the State highway access changes to the subject property include the closing of the southerly driveway on Route 206, which provides one of two exit points from the site to Route 206. Under the DOT's proposed modification, the northerly driveway would be expanded to sixty-one feet and continue to provide ingress and egress to Route 206. Because the subject property would continue to have direct ingress and egress to Route 206, the change does not have to be considered a revocation of access and the provisions of N.J.S.A. 27:7-94 do not apply. The proposed access change may be classified as a modification of access because there will be a change in the number of access points and the width of the remaining Route 206 access point will be changed by more than five feet.
The Director determined that the proposed modification of access would represent a substantial public benefit and that it would enable the service station on the property to continue operation, although internal traffic circulation patterns may change. Despite Getty's suggestion that business to its service station would decline if the modification was to proceed, it suggests nothing that would indicate that the existing use would be unable to continue. Getty was afforded the opportunity to make a record by way of the proceedings before the Division. Based on that record, we cannot conclude that the Director's decision was an unreasonable exercise of agency discretion, or that it was arbitrary or capricious. Cedar Grove v. Sheridan, 209 N.J.Super. 267, 278-280, 507 A.2d 304 (App.Div.), certif. denied, 104 N.J. 464, 517 A.2d 448 (1986).
Getty has failed to meet its burden in rebutting the presumption of validity afforded to the promulgated regulations. Medical Soc'y v. Dept. of Law & Public Safety, supra (120 N.J. at 25, 575 A.2d 1348). Even though the enabling statutes refer only once to the term "modification," and that provision is in the section mandating the State Highway Access Management Code (N.J.S.A. 27:7-91d), the regulations promulgated to implement the proposed modifications are not ultra vires.[4] New Jersey State League of Municipalities v. Department of Community Affairs, 158 N.J. 211, 225, 729 A.2d 21 (1999); In re Markel Ins. Companies, 319 *64 N.J.Super. 23, 43-44, 724 A.2d 848 (App. Div.1999).
Affirmed.
NOTES
[1] The property in question is owned by Power Test Realty Co., and is improved with a Getty-brand service station owned by Getty Realty Corporation (Getty). Getty, as tenant, apparently was given power of attorney to proceed on behalf of the owners in the matter.
[2] The DOT Commissioner is granted authority to develop an "access code" to regulate State highway access in N.J.S.A. 27:7-91d which provides:

d. The access code shall set forth administrative procedures for the issuance of access permits. The code shall include a provision providing for a period of time for the renewal, issuance, modification or denial of these permits, not to exceed 200 days from the date of receipt of the completed application for a major access permit and not to exceed 45 days from the date of receipt of the completed application for a minor access permit.
[3] In a published summary of the then proposed readoption of the State Highway Management Code, with amendments, the Division discussed potential benefits under its proposal:

The efficiency and safety of a highway depends to a large extent upon the amount and character of roadside interference with through traffic. Most interference originates in vehicular movements to and from businesses, residences, or other developments along the highway. Accordingly, regulation and control of access points are necessary to provide efficient and safe operation on the highway, and to obtain the optimum use of highway investments.
The proposed readoption with amendments will continue to establish an access code that enables the State to protect the valuable capital investment in its highway system. The access code balances the public's desire for mobility with the property owners' right to reasonable access to the general system of streets and highways. The public benefits through enhanced mobility of people and goods. The anticipated reduction in the number of access points and conflicts will also improve safety.
[28 N.J.R. 3734 (August 31, 1996).]
[4] We thus need not address whether N.J.S.A. 27:7-92b dealing with the revocation and replacement of access permits in effect on the effective date of the Act in itself provides authority for a modification of a permit or is limited to revocation by the DOT and owner-initiated replacement of an existing access permit. In this vein, Getty argues that N.J.S.A. 27:7-92b "merely acknowledges" the fact that access permits may be replaced. In support of its argument, Getty asserts that N.J.S.A. 27:7-94c(3) and N.J.S.A. 27:7-95a illustrate owner-initiated replacement of access points.