**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3709-19

MAPLE SHADE EQUITIES, LLC,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF TRANSPORTATION,

    Respondent.

Argued October 18, 2021 – Decided November 17, 2021

Before Judges Messano, Accurso and Rose.

On appeal from the New Jersey Department of Transportation.

Keith A. Davis argued the cause for appellant (Nehmad Perillo Davis & Goldstein, PC, attorneys; Keith A. Davis and Michael J. Lario, Jr., on the briefs).

Brian Ashnault, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; David M. Kahler, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Maple Shade Equities, LLC (Maple Shade or developer), challenges a final agency decision of the New Jersey Department of Transportation (DOT or agency), deeming untimely Maple Shade's appeal of certain major access permit conditions, and finding no grounds for relaxation of the time requirements under section 4.32(b)(1) of the State Highway Access Management Code, N.J.A.C. 16:47-1.1 to 16:47-14.1 (Access Code).[1] The Director of the DOT's Division of Right of Way and Access Management issued the agency's final decision after affording Maple Shade an informal hearing on the merits of its application. We affirm.

We summarize the relevant facts and procedural history from the record evidence. Maple Shade purchased commercial property located at the intersection of Route 38 and Lenola Road in Maple Shade Township. By all accounts, the intersection was marked by high volume traffic during commuter hours; the DOT rated the intersection as "F," for the lowest level of service.

At the time of the purchase, the property consisted of a car wash, and a gas station with a convenience store. Four existing driveways were located

---

[1] On July 16, 2018, after Maple Shade submitted its application, the Access Code was revised and renumbered. We cite the Access Code provisions in effect at the time of Maple Shade's April 10, 2016 application.

along the sides of the property: one provided open access along Lenola Road; three fronted Route 38. Of the Route 38 driveways: the eastern-most permitted ingress only; the center allowed open access; and the western-most permitted egress only by right turns onto the highway.

Maple Shade planned to redevelop the property by constructing a drive-through bank and drive-through coffee and donut shop. Pertinent to this appeal, on August 10, 2016, Maple Shade submitted to the DOT a major access permit application, seeking to revise the property's direct access to Route 38. The developer proposed closing the eastern and center driveways along Route 38 and expanding the western driveway to allow open access.

In February 2017, after consulting with the agency's various experts, the DOT notified Maple Shade of several concerns. Citing the existing volume of traffic at the intersection during morning and evening peak hours, the DOT "strongly recommend[ed]" that Maple Shade add an auxiliary "100[-]f[oo]t right turn lane" to address the agency's concerns. The developer countered that its existing third lane was an auxiliary lane, which was designed to serve the property's gas station and adjacent shopping center. Accordingly, Maple Shade argued an additional auxiliary lane increased the danger to drivers by requiring merger across two lanes.

3

In June 2017, the DOT revised its position, "strongly recommend[ing] that [Maple Shade] provide at least a [ten-foot-]wide shoulder along the Route 38 site frontage" instead of adding a fourth lane. The DOT also noted it was in the process of proposing a plan for the intersection that would reduce congestion. Accordingly, a widened shoulder would reduce delays caused by the Maple Shade development, while serving as an effective interim mitigation device until the DOT's future Route 38 project was completed.

Following a series of exchanges between the parties, in December 2017, Maple Shade submitted revised plans that included the ten-foot-wide shoulder. According to the plans, a six-foot portion of the shoulder was located on property owned by the DOT, and Maple Shade would convey the remaining four-foot, 785 square-foot strip to the agency. On March 19, 2018, the DOT issued the permit, which included the ten-foot-wide shoulder among fifty-five conditions. Maple Shade completed the project in accordance with the agency's conditions.

After completing the project, and nearly four months beyond the Access Code's thirty-day deadline for appeals, Maple Shade filed its appeal with the DOT on August 1, 2018. Seeking compensation for the costs of construction, and "fair market value of the land it was required to dedicate," the developer

4

claimed the agency exceeded its powers by requiring conditions that were not mandated by the Access Code. Initially denying Maple Shade's request as untimely, the agency afforded Maple Shade an informal hearing to address the developer's "assertions of unsafe conditions on the site," and "improper acts" allegedly committed by DOT staff.

On the March 6, 2019 return date, the parties requested an adjournment to continue negotiations. After failing to reach an agreement, the DOT moved to dismiss Maple Shade's appeal as untimely. The Director conducted a plenary hearing over two days in November 2019 and February 2020. Joshua Idowu, the DOT's project manager for Maple Shade's application, testified on behalf of the agency. Maple Shade presented the testimony of three witnesses: Clifton Quay, a licensed professional engineer, who served as a civil consulting engineer on the project; Adam Catherine, a professional traffic operations engineer; and Kenneth Lowther, an equity partner of Maple Shade.

In essence, Idowu testified about the agency's safety concerns regarding the projected increase in traffic flow anticipated by Maple Shade's proposed development plan, and the need for an expanded shoulder to address those concerns. In view of the DOT's anticipated future project at the location, the agency granted a waiver under the Code, without which Maple Shade's plan

5

would have been rejected. See N.J.A.C. 16:47-4.24(a)(1)(ii) (prohibiting deterioration in the level of service at the proposed site plan); see also N.J.S.A. 7-90(c), (e), and (g).

Conversely, Catherine stated he opposed widening the shoulder, which he opined would cause confusion for drivers accessing the Maple Shade property and the adjacent restaurant. Notably, however, Catherine acknowledged that the DOT's request was "reasonable."

Quay testified he had argued against expanding the shoulder but believed the DOT would not approve the permit unless Maple Shade included the shoulder expansion in its design plans. Quay was concerned Maple Shade would be unable to meet contractual deadlines with its lessees if the developer continued to oppose the shoulder expansion.

Lowther confirmed the permit process delayed the commencement of those leases. He acknowledged Maple Shade intended to file an appeal soon after executing the permit. According to Lowther, the developer claimed $174,500 for costs of construction, loss of income, and the value of the property dedicated for the expanded shoulder.

Following summations, the Director reserved decision. On April 23, 2020, the Director issued a cogent written decision, again concluding Maple

6

Shade's appeal was untimely. Because the conditions imposed were "proper exercises of the state agency's police power," the Director found no grounds for relaxation of the then-existing time requirements. According to the Director:

> Despite being provided a full opportunity to present facts and testimony setting forth how the []DOT "coerced" the [d]eveloper, the record contains nothing more than conclusory arguments . . . and innuendo that the []DOT was seeking to minimize its costs related to a proposed . . . [p]roject which may or may not occur at some indefinite point in the future. The [d]eveloper failed to provide any specific testimony or documentation reflecting improper behavior by the Bureau.
>
> Rather, the record shows that the Bureau acted to protect the public by working to ensure that site conditions provided for a safe and efficient roadway while working with the [d]eveloper to create an acceptable construction plan. The Bureau engaged in a substantive back-and-forth conversation with the [d]eveloper over several months and was receptive to the [d]eveloper's responses, at one point changing its recommendation for a 100[-]foot right turn lane to a [ten-]foot-wide shoulder after receiving responses from [Maple Shade,] clearly indicating flexibility in spite of the Bureau commentary's use of the phrase, "strongly recommended."
>
> In fact, the record indicates the Bureau clearly attempted to accommodate the [d]eveloper [by] voluntarily granting waivers necessary for the [d]eveloper to move forward with their project. Without a waiver, the [d]eveloper's application would have been rejected as the Access Code prohibits any further degradation of the nearby intersection's level of

7

service. N.J.A.C. 16:47-4.24. The Bureau's recommendations, in part, were intended to minimize the impact on the level of service at the intersection and to accommodate the [d]eveloper's application.

This appeal followed.

On appeal, Maple Shade does not dispute it failed to file its appeal before the DOT within the thirty-day time frame mandated by N.J.A.C. 16:47-4.32(b)(1), and was granted an informal hearing on the merits. Instead, Maple Shade reprises its argument that the DOT improperly applied the Code's time restriction to the developer's "unique legal and factual situation" here, where the agency's "recommendations" were not "required" under the Code. Maple Shade maintains it is entitled to just compensation for the DOT's unjust taking of its property, and the DOT failed to "turn square corners" by including "illegal conditions" in its permit.

Appellate review of a final agency decision is well-settled. Ordinarily, we defer to the agency's determination unless it was "arbitrary, capricious, or unreasonable." Melnyk v. Bd. of Educ. of Delsea Reg'l High Sch. Dist., 241 N.J. 31, 40 (2020). Our Supreme Court has long recognized

the judicial role is generally restricted to three inquiries: (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which

8

the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995); see also In re Stallworth, 208 N.J. 182, 194 (2011); In re Carter, 191 N.J. 474, 482-83 (2007).]

"Through the State Highway Access Management Act, N.J.S.A. 27:7-89 to -98 [(Access Act)], the Legislature delegated authority over State highway access to the DOT." In re Route 206 at New Amwell Rd., 322 N.J. Super. 345, 353 (App. Div. 1999). Although property owners with access to public roads enjoy a right of access, that right "is subject to regulation for the purpose of protecting the public health, safety and welfare," N.J.S.A. 27:7-90(e), and "subordinate to the public's right and interest in a safe and efficient highway," N.J.S.A. 27:7-90(g).

The Access Act requires "[a]ny person seeking to construct or open a driveway . . . entering into a State highway [to] first obtain an access permit from the [DOT]." N.J.S.A. 27:7-92(a). The DOT manages access to the State highways under the Access Act and its implementing regulations, the Access Code, which sets forth the "administrative procedures for the issuance of access permits." N.J.S.A. 27:7-91(d). For certain access levels, applicable here, the DOT "may modify a proposed access or deny an access permit application

9

otherwise in conformance with th[e] Access Code if site-specific highway efficiency and safety concerns so warrant." N.J.A.C. 16:47-3.17(a)(1).

To appeal a major permit application, applicants must "submit a written request for reconsideration to the Bureau of Major Access Permits within [thirty] days of a notice of rejection or unacceptable permit conditions. The request shall include reasons for the appeal." N.J.A.C. 16:47-4.32(b)(1). "If the request is granted," the applicant is afforded "an opportunity to present additional information in support of the application." N.J.A.C. 16:47-4.32(b)(2). If the applicant disagrees with the decision rendered by the Manager of the Bureau of Major Access Permits, an appeal may be made to the Director of Design Services,[2] who "shall schedule an informal hearing within [ten] days of receipt of the applicant's appeal." N.J.A.C. 16:47-4.32(b)(2) and (3).

Guided by these principles and in view of the record, we are satisfied the Director correctly determined Maple Shade's appeal before the DOT was untimely and the conditions imposed in the permit were consistent with the safety and efficiency concerns embodied in the Access Code. See N.J.A.C. 16:47-3.17(a)(1). Pursuant to our limited standard of review, Stallworth, 208

---

[2] According to the Director's decision in the present matter, following the DOT's reorganization, the duties previously assigned to the Office of Design Services fall within his office, which oversees the Bureau of Major Access.

N.J. at 194, we therefore affirm substantially for the reasons expressed in the Director's comprehensive written decision. R. 2:11-3(e)(1)(D). In doing so, we determine the agency's decision was not arbitrary, capricious, or unreasonable. Melnyk, 241 N.J. at 40. We add only the following comments.

Citing our Supreme Court's decision in Toll Brothers, Inc. v. Board of Chosen Freeholders of County of Burlington, 194 N.J. 223 (2008), Maple Shade argues it is entitled to relief from the Access Code's time constraints under equitable principles. Maple Shade's contentions are misplaced.

In Toll Brothers, the developer acquired an interest in a 540-acre commercial, residential, and retail development in Burlington County. 194 N.J. at 230. The local planning authorities had conditioned their approvals on the developers' willingness to make certain road improvements to address the increased traffic development would generate. Id. at 231-32. Toll Brothers executed a developer's agreement, whereby it adopted those conditions and agreed it would "be responsible and solely liable to complete . . . [road] improvements" related to the development. Id. at 234. Toll Brothers was granted approval based on those conditions. Ibid.

Thereafter, Toll Brothers was forced to abandon construction plans for one portion of the parcel it had originally acquired, and it subsequently sought

11

to renegotiate its obligations under the developer's agreement. Id. at 240. Toll Brothers sought recalculation of the costs it was required to assume to "more adequately reflect its pro-rata share." Ibid. The County Planning Board refused to amend the developer's agreement, prompting Toll Brothers to seek reformation in court, asserting it should be permitted to move before the County to demonstrate that there was a change in circumstance that required reconsideration of the conditions set forth in the developer's agreement. Id. at 239-40. Toll Brothers argued that enforcement of the developer's agreement would violate the off-tract contribution provision set forth in N.J.S.A. 40:55D-42 of the Municipal Land Use Law (MLUL), which prohibits the government from requiring off-tract improvements beyond a developer's pro-rata share. Id. at 240.

The trial judge granted summary judgment to the defendants, finding "the terms of the developer's agreements 'clear and unambiguous.'" Ibid. The judge rejected Toll Brothers' contention that it was entitled to a Board hearing because that argument "'confuse[d] a Developer's Agreement with an ordinary condition of approval' and would 'ignore[] basic principles of contract law that preclude[] such reconsideration.'" Ibid. (alterations in original). Toll Brothers appealed, and we affirmed. 388 N.J. Super. at 103 (App. Div. 2006).

12

The Supreme Court rejected the County's argument that the developer's agreement was a binding contract and concluded that planning boards were required to exercise their delegated powers in "strict conformity with . . . the MLUL." Id. at 243. The Court concluded that the trial court erred in denying access to a hearing before the Board and held that a developer's agreement is not an independent obligation that frees the parties from the restraints in the MLUL. Id. at 254. The Court held that Toll Brothers had a right to appear before the County to establish a sufficient change in conditions surrounding the property. Ibid. The Court relied on N.J.S.A. 40:55D-12(a), which codifies the right of a party to request a change in the conditions of approval, public notice, and a hearing for modification of conditions reflected in a developer's agreement. Id. at 247.

The facts and circumstances of the present case are inapposite. Significantly, no change of circumstances was presented to the DOT. Nothing changed between the developer's signing of the permit and its filing of a notice of appeal with the agency. Notably, Maple Shade planned to file an appeal around the time it signed the permit, but completed the project as agreed, and waited four months to appeal. There simply was no change of circumstances

13

between the signing of the permit and the filing of the appeal comparable to the change of circumstances demonstrated by the developer in Toll Brothers.

To the extent not addressed, Maple Shade's remaining contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3709-19