NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2564-21

IN THE MATTER OF
ROUTE 66, JUMPING BROOK
ROAD TO BOWNE ROAD/
WAYSIDE ROAD,
MODIFICATION OF ACCESS,
BLOCK 3705, LOT 12,
NEPTUNE, MONMOUTH
COUNTY (THE MASSA
DESIGN & BUILDING CO., LLC).

_____

**APPROVED FOR PUBLICATION**

**October 11, 2023**

**APPELLATE DIVISION**

Argued September 11, 2023 – Decided October 11, 2023

Before Judges Sabatino, Mawla, and Marczyk.

On appeal from the New Jersey Department of Transportation.

Eric J. Boden argued the cause for appellant Massa Design & Building Company, LLC (Brach Eichler LLC, attorneys; Susan R. Rubright and Eric J. Boden, of counsel and on the briefs).

Dennis J. Mikolay II, Deputy Attorney General, argued the cause for respondent New Jersey Department of Transportation (Matthew J. Platkin, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Dennis J. Mikolay II, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

This administrative appeal concerns a State roadway project's alteration of a commercial property owner's access to a State highway. It presents this court with its first opportunity in a published opinion to address certain provisions adopted in 2018 that extensively revised the State Highway Access Management Code (the "Access Code"), N.J.A.C. 16:47–1.1 to –14.1.

The pivotal legal issue here is whether the roadway project's replacement of appellant's direct access to State Highway 66 ("Route 66") through an existing driveway with access through a shared driveway connecting to an adjacent landowner's parcel comprises a "revocation" or "removal" of appellant's means of access, or, alternatively, whether the change is simply a "modification" of access.

Our analysis of this issue entails consideration of both the pertinent statutory provision, N.J.S.A. 27:7–94, and various 2018 amendments to the companion regulations within the Access Code that revised the applicable terminology. The configuration will enable motorists going to appellant's property from Route 66 to turn into the shared driveway, briefly travel on an easement through the adjacent property, and then branch off to an internal driveway on appellant's lot leading to appellant's commercial building.

For the reasons that follow, we affirm the Department of Transportation's final agency decision deeming the new configuration a "modification" of appellant's access to Route 66, rather than a "revocation" or "removal" of access. The new configuration is a modification because under the revised 2018 version of the Access Code, it entails "replacing all ingress or all egress between a State highway and a lot or site with ingress or egress via a private easement on a different lot or site[.]" N.J.A.C. 16:47–2.1.

The configuration is not a revocation or a removal because it does not eliminate all access to Route 66 and does not require motorists to traverse another public street in order to connect to appellant's premises. The Department did not misapply its authority and regulatory expertise in deeming the roadway changes a modification.

We also sustain the Department's rejection of the alternative new means of access proposed by appellant and its expert. The rejection was neither arbitrary nor capricious.

I.

We derive the following pertinent facts from the administrative record. Appellant Massa Design & Building Company, LLC ("Massa Design") owns a single-story office building situated on the westbound side of Route 66 in

Neptune. The building houses an architect's office and a round-the-clock dialysis center that accommodates emergency patient visits. The property includes eighty-nine parking spaces. It is adjacent to MJ's Restaurant Bar & Grill ("the restaurant"). The restaurant was not a party to the agency proceedings and has therefore not participated in the appeal.

Currently, a motorist driving eastbound or westbound along Route 66 can turn into Massa Design's property through a driveway entrance connecting to the highway. Westbound motorists on Route 66 make a right turn into Massa Design's driveway, whereas motorists going eastbound must wait for opposing traffic to clear and then turn left across Route 66 into that existing driveway.

In November 2020, the Department's Office of Access Design ("the OAD") notified Massa Design of its plans to change Route 66 in a manner that would affect Massa Design's driveway access to the highway. In April and June 2021, Massa Design's owner and counsel attended informal meetings with the OAD to discuss the owner's objections to the proposed plan. In August 2021, the OAD informed Massa Design it had decided to modify the driveway as the OAD had proposed.

Massa Design filed an administrative appeal of the OAD's determination. Two days of formal hearings ensued, presided over by the Director of the

A-2564-21

Department's Division of Right of Way and Access Management, pursuant to N.J.A.C. 16:47–11.3(f). The Department presented testimony from a supervising engineer in the OAD, and a project manager of the firm undertaking the Route 66 re-configuration. Appellant presented testimony from the owner of Massa Design and an engineering expert.

The change to Massa Design's access was proposed in conjunction with a State highway project to improve capacity and safety of the highway corridor by expanding Route 66. In October 2015, the Department held a public meeting in Neptune to provide the public with information about the project and to answer questions about the initial project design. That initial design retained a separate driveway for Massa Design, but proposed creating a physical grass median down the middle of Route 66 and adding a signalized intersection.

Massa Design's owner expressed concerns at the meeting about the plan's elimination of direct left turns into and out of the property (due to the median) for vehicles traveling eastbound. He asserted the change would impede access of ambulances traveling to the dialysis center.

As the Route 66 project progressed, the Department replaced its initial engineering consultants with another firm, which prepared the final project design at issue here. The final design plan included creating a traffic circle (also

5

termed a "roundabout") on Route 66 at a nearby intersection, located east of Massa Design and the restaurant, at the behest of federal highway administrators.  The installation of the traffic circle would create a more continuous flow of vehicles traveling westbound on Route 66 towards Massa Design and the restaurant, eliminating the breaks in traffic caused by the former traffic light.  To preserve Route 66 access to the Massa Design and restaurant properties, the final design plan proposed replacing Massa Design's existing driveway with one driveway shared with the restaurant.

As described in the record, the Department's proposed design features a designated left-turn lane on Route 66, which will allow vehicles traveling eastbound to "make a left turn using the left turn slot, enter the shared-use driveway and hang a left into the Massa [Design] site and then a right . . . into the internal site driveway."  "Vehicles traveling westbound on Route 66 would . . . make a right into the shared driveway . . . . They would then turn left into the Massa [Design] site and then right into the internal driveway."

This revised access plan requires the Department to obtain an easement from the restaurant for a portion of the shared driveway and to relocate Massa Design's pylon sign and four parking spaces.  Two of the four spaces and the sign would have to be moved to the restaurant's property.

6

Massa Design and its expert presented an alternative plan that would retain separate driveways onto Route 66 for its property and the restaurant. Under its proposal, visitors to the Massa Design property traveling eastbound on Route 66 would use the left turn slot currently going into the restaurant to make a u-turn, turning left onto the highway going west. Drivers would then decelerate on Route 66, and then finally turn right into Massa Design's separate driveway.

When asked why the Department's final design eliminated Massa Design's separate driveway, its testifying expert explained that the initial design had included a traffic signal that would "provide predictable gaps in traffic which would allow a vehicle in the u-turn lane . . . to make a u-turn using this predictable gap[][.]" But the addition of a roundabout to the project, he stated, "creates a more continuous flow of traffic, so there aren't the predictable gaps for the car to make a u-turn." The expert expounded, "we were concerned with the u-turn movements from Route 66 eastbound, to access the Massa [Design] site, in that . . . a vehicle would have to make a u-turn, enter into high-speed traffic, in the outside lane and then immediately start to decelerate, to access the

Massa [Design] site as having a separate driveway."  As he further recounted, the Department

> wanted the left turn lane to go directly into a driveway instead of crossing the highway at an angle and slowing down [to] enter[] another driveway . . . . It's safer with a shared driveway than to have a car cross two lanes of highway and a shoulder to get to that driveway at an angle.

Massa Design's expert agreed that the introduction of a roundabout will "change what the gap patterns are along the highway[,]" but he opined that the "u-turn maneuver [Massa Design was] proposing for the separate driveways is in no way different than the left turn that is permitted" in the final design.  He conceded, however, that his design was not in compliance with the Access Code's twelve-foot edge clearance requirement between adjacent driveways.

After the administrative record closed, the Director issued a final agency decision on March 23, 2022, adopting the OAD's proposed plan as a "modification of a driveway."  Determining the plan to be compliant with the Access Code, the Director made several findings.

First, the Director found the shared driveway plan promotes public safety, noting that the Access Code "encourages the sharing of driveways . . . to minimize the number of driveways on the State highway system[,]" N.J.A.C. 15:47–1.3(l).  He highlighted the testimony of the OAD's engineering expert,

who had explained that "[e]very driveway on a [S]tate highway creates a conflict point with entering and exiting vehicles onto the highway corridor. So every driveway that is eliminated improves the highway safety." The Director also found critical that, under Massa Design's alternative plan, a driver would be required "to make a [u]-turn into traffic coming from the roundabout at speeds up to fifty-five miles per hour[,]" which would create "a less than desirable condition[.]"

Second, the Director determined that to adopt Massa Design's plan entailed a non-compliant design, because it does not have the sufficient twelve-foot edge clearance required under the Access Code.

Third, the Director found insignificant Massa Design's stated concerns about "overflow parking" from the restaurant and "maintenance and operation of the [s]hared [d]riveway" because neither presents a departure from the status quo.

This appeal by Massa Design ensued. As its central point, Massa Design contends the Department erroneously deemed the new configuration a modification rather than a revocation or removal of access. This error is argued to be one of consequence because, under the statutory and regulatory scheme, the Department's obligation to pay for the costs of reconfiguring the access to

9

Route 66 is more explicit for a revocation or removal than for a modification. In addition, appellant contends the Department's adoption of its own proposed plan, and its rejection of Massa Design's alternative, is arbitrary and capricious.

II.

Our standard of review is limited. Appellate courts will only reverse an administrative agency decision that is "arbitrary, capricious, or unreasonable, or [] not supported by the evidence in the record as a whole." Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579–80 (1980)); see also Parsells v. Bd. of Educ. of Somerville, 254 N.J. 152, 162 (2023). An agency action is arbitrary, capricious, or unreasonable if it violates the law, if the record does not contain substantial evidence to support it, or if the agency conclusion "could not reasonably have been made on a showing of the relevant factors." In re Carter, 191 N.J. 474, 482–83 (2007) (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)). We also acknowledge the Department of Transportation's considerable expertise over issues of State highway access. A "presumption of validity" is afforded to the Department's plans and decisions in that domain. In re Revocation of Access of Block No. 613, Lots No. 4 & 5, Twp. of Toms River, 224 N.J. 53, 67, 69 (2016). That said, we review questions of law arising in

10

administrative cases de novo. <u>Mayflower Sec. Co. v. Bureau of Sec.</u>, 64 N.J. 85, 93 (1973).

The issues presented here arise under the State Highway Access Management Act, N.J.S.A. 27:7–89 to –98 ("the Act"). Among other things, the Act recognizes that "[e]very owner of property which abuts a public road has a right of reasonable access to the general system of streets and highways in the State, but not to a particular means of access." N.J.S.A. 27:7–90(e). However, "[t]he right of access is subject to regulation for the purpose of protecting the public health, safety and welfare." <u>Ibid.</u> Further, "[t]he access rights of an owner of property abutting a State highway must be held subordinate to the public's right and interest in a safe and efficient highway." N.J.S.A. 27:7–90(g). <u>See also</u> <u>High Horizons Dev. Co. v. State, Dep't of Transp.</u>, 120 N.J. 40, 48 (1990) (noting that the right of access "must be consonant with traffic conditions and reasonable and uniform police requirements" (quoting <u>State Highway Comm'r v. Kendall</u>, 107 N.J. Super. 248, 252, 258 (App. Div. 1969))). The approved means of access is created by a property owner obtaining an access permit from the Department. N.J.S.A. 27:7–92.

N.J.S.A. 27:7–94 provides the statutory framework for the revocation of a property owner's access to a State highway.  In relevant part, the statute provides:

> (a) The commissioner [of the Department] <u>may</u> . . . <u>revoke an access permit after determining that alternative access is available</u> which meets the standards provided in subsection c. . . .
>
>  . . . .
>
> (c) For the purposes of this section, <u>alternative access</u> shall be assumed to exist if the property owner enjoys <u>reasonable access to the general system of streets and highways in the State</u> and in addition, in the case of the following classes of property, the applicable following condition is met:
>
>> (1) For property zoned or used for <u>commercial</u> purposes, <u>access onto any parallel or perpendicular street, highway, easement, service road or common driveway</u>, which is of sufficient design to support commercial traffic to the business or use, and is so situated that motorists will have a convenient, direct, and well-marked means of both reaching the business or use and returning to the highway.
>
> [N.J.S.A. 27:7–94(a), (c), (c)(1) (emphasis added).]

The statute gives the Department authority to revoke State highway access only when alternative access is provided under a two-pronged standard for reasonable access.  See In re Revocation of Access of Block No. 613, 224 N.J.

at 67 (noting the statute "establish[es] two criteria for reasonable access").  The purpose of this dual-pronged reasonable access provision in N.J.S.A. 27:7–94(c) "is to [e]nsure that a property owner is being treated fairly and equitably, and is not being deprived of reasonable use of th[eir] property, when the [Department] determines to close an existing access point because it does not comply with current requirements."  In re Revocation of Access of Block No. 1901, Lot No. 1, Borough of Paramus, Bergen Cnty. Parkway 17 Assocs., 324 N.J. Super. 322, 332 (App. Div. 1999).

The Act requires the Department to adopt regulations to carry out the legislative objectives, specifically in the form of a "State highway access management code." N.J.S.A. 27:7–91 (i.e., the Access Code).  The Access Code was first adopted in 1992 and has been periodically revised since that time.

The Access Code was extensively revised in 2018 after a lengthy comment process that began in 2012.  50 N.J.R. 11(a), 11 (Jan. 2, 2018) (Summary).  The Department explained that in the intervening twenty-five years since its adoption, the Access Code had been amended in numerous ways, but the rules "ha[d] never been evaluated for ease of use, simplification of organizational layout, or clarity of intent." Ibid.  The Department performed such an evaluation and believed that "extensive revisions [we]re needed." Ibid.  Consequently, the

13

Department promulgated "a full repeal and replacement of the [Access] rules." Ibid. As part of that full repeal, many aspects of the Access Code's definitions and terminology were revised. Ibid.

The term "revocation" is not defined within the statute. However, it is defined by regulation within the Access Code as follows:

> "Revocation" means termination of an access permit by the Commissioner, when all State highway access is removed after a determination that alternative access will be available for use at the conclusion of the highway project.
>
> [N.J.A.C. 16:47–2.1 (emphasis added).]

The underscored phrase "when all State highway access is removed" was inserted into the definition of revocation as part of the 2018 amendments. Compare N.J.A.C. 16:47–2.1 with N.J.A.C. 16:47–1.1 (2012).

The above-mentioned term "State highway access" was not defined in the Access Code until 2018. Ibid. It is now defined this way:

> "State highway access" means a driveway[1] on a lot or site, or an easement over an adjacent lot or site's frontage, that allows for vehicular movement between a State highway and a lot or site.

---

[1] A "driveway" is defined as "a private roadway providing access between a State highway or street and a lot or site that does not exist in its own right-of-way. A driveway provides ingress, egress, or both. A driveway is not a State highway or street." Ibid.

[Ibid. (emphasis added).]

Conversely, the 2018 version of the Access Code defines "Non-State highway access" as follows:

> "Non-State highway access" or "NHSA" means access between a public street and a lot or site. The access can be either across the lot or site's property lines, by way of a permanent easement across an adjacent lot, or by a private street to the public street. An emergency driveway shall not constitute non-State highway access.
>
> [Ibid. (emphasis added).]

The distinction between State highway access and non-State highway access can be stated rather simply: the former entails a connection between a lot and a State highway, whereas the latter entails a lot's connection to "a public street" that is not a State highway. Ibid.

This critical difference was explained by the Department in its comments to the proposed 2012 revisions to the regulations introducing the phrase "non-State highway access . . . to indicate that it means access between a lot or site and a public street." 50 N.J.R. at 12 (response to third comment to Subchapter 2). In the 2018 Summary of Significant Changes, the Department notes again:

> [t]he phrase "non-State highway access" replaces the phrase "alternative access" and means access to a lot or

15

site via an improved roadway other than a State highway.

[50 N.J.R. at 22 (Summary of Significant Changes) (codified at N.J.A.C. 16:47–2.1) (emphasis added).]

The Access Code also uses the term "modification," a word that is not mentioned in the Act. As revised in 2018 and thereafter, that term is defined thusly:

"Modification of driveway" means changes to driveways in conjunction with the implementation of a State highway improvement advanced by the Department or others, with Department approval, which changes the number of driveways, the width of the curbline opening of a driveway by more than five feet, or the location of a driveway by more than [ten] feet. It includes replacing all ingress or all egress between a State highway and a lot or site with ingress or egress via a private easement on a different lot or site;[2] or elimination of ingress, egress, or both between one State highway and a lot or site, while still providing ingress, egress, or both between a different State highway and the lot or site. Modification of driveway does not refer to changes made by a lot or site owner to his or her own driveway.

_____

[2] Of particular relevance here is that the sentence concerning "ingress or egress via a private easement on a different lot or site" was not within the definition of "modification" that preceded the 2018 amendments. Compare 50 N.J.R. at 28 (Proposed New Rules) (codified at N.J.A.C. 16:47–2.1) with N.J.A.C. 16:47–1.1 (2012).

[N.J.A.C. 16:47–2.1 (emphasis added); see also N.J.A.C. 16:47–11.1(b)(2) (similarly defining a modification).][3]

N.J.A.C. 16:47–11.3 outlines the procedures to be followed when the Department undertakes a roadway project that causes a modification of a property owner's access to a State highway.  Among other things, the Department must provide the owner with written notice of the proposed modification, N.J.A.C. 16:47–11.3(b), an opportunity to accept or appeal the proposal, N.J.A.C. 16:47–11.3(d), a meeting to attempt to resolve any dispute, N.J.A.C. 16:47–11.3(e), and a right to a hearing before a departmental hearing officer, N.J.A.C. 16:47–11.3(f).

The 2018 revision of the Access Code also introduced the term "removal of a driveway."  It is defined as follows:

> "Removal of driveway" means the removal of all ingress between a State highway and a lot or site or all egress between a State highway and a lot or site, or both.
>
> [N.J.A.C. 16:47–2.1.]

---

[3]  The Access Code also defines a lesser alteration known as an "adjustment," which pertains to changing a driveway's width by five feet or less or its location by ten feet or less, moving a driveway away from the highway's centerline, such as when a highway is widened, or changing the driveway's slope.  N.J.A.C. 16:47–11.1(b)(1)(i)–(iv).  An adjustment may not be appealed.  N.J.A.C. 16:47–11.2(c).  The parties do not contend the present case involves such a mere adjustment.

The regulations in N.J.A.C. 16:47–11.4 specify numerous requirements that are triggered when all ingress and egress between a site and a State highway has been removed.  The requirements include such things as revocation of an existing permit, N.J.A.C. 16:47–11.4(b), identification of reasonable access to the State highway though the "general system of streets and State highways[,]" N.J.A.C. 16:47–11.4(c), suitable signage directing motorists to and from commercial lots, N.J.A.C. 16:47–11.4(e), the Department's obligation to "design and construct any improvements to a municipal or county roadway required" for access, N.J.A.C. 16:47–11.4(g), and an appeal process, N.J.A.C. 16:47–11.4(j) and (k).

When it revised the Access Code in 2018, the Department explained how it was deploying the new terminology:

> Subchapter 11 provides for the adjustment, modification, and removal of driveways by the Department and incorporates language found at existing N.J.A.C. 16:47–4.33.  <u>The concept of revocation of access is amended to that of removal of a driveway</u>. . . . The language <u>now</u> provides that <u>modification of a driveway includes replacing all ingress to a lot or site from a State highway or all egress from a lot or site to a State highway with ingress or egress via a private easement between a State highway and a different lot or site</u>.  It also includes eliminating ingress to a lot or site from a State highway, egress from a lot or site to a State highway, or both, while still

providing ingress or egress, or both, on a different State highway. As the situations described above still provide the lot or site with State highway access, they are now considered a modification of driveway access. N.J.A.C. 16:47–11.1(b)[(3)(i) and (ii)] incorporate language found at existing N.J.A.C. 16:47–4.33(d)[(2)(i)].

[50 N.J.R. at 28 (Proposed New Rules) (codified at N.J.A.C. 16:47–11.1) (emphasis added).]

The fiscal and operational consequences of classifying a change in State highway access to a property as a "modification" rather than as a revocation (or removal) could be significant. If the change rises to the severity of a revocation, then N.J.S.A. 27:7–94(d) imposes several obligations upon the Department. Specifically,

(d) When the commissioner revokes an access permit pursuant to this section, the commissioner shall be responsible for providing all necessary assistance to the property owner in establishing the alternative access, which shall include the funding of any such improvements by the department. Until the alternative access is completed and available for use, the permit shall not be revoked. The commissioner shall also erect on the State highway and on connecting local highways suitable signs directing motorists to the new access location. The commissioner may enter into agreements with property owners for phased development and provisions of this subsection shall not supersede any such agreements.

As provided in this subsection, necessary assistance shall include but not be limited to the costs

19

and expenses of relocation and removal associated with engineering, installation of access drives in a new location or locations, removal of old drives, on-site circulation improvements to accommodate changes in access drives, landscaping, replacement of directional and identifying signs and the cost of any lands, or any rights or interests in lands, and any other right required to accomplish the relocation or removal.

[N.J.S.A. 27:7–94(d) (emphasis added).]

The statute contains no comparable mandates for the Department to pay the costs of improvements, engineering, construction, landscaping, signage, and other measures in a situation of access "modification." However, the Access Code regulations do prescribe that "[a]s appropriate, the Department will provide all necessary assistance to establish changes in driveways pursuant to [the modification] subchapter." N.J.A.C. 16:47–11.1(e). That may include, but is not limited to, such things as removal of existing driveways, construction of alternative access, engineering design, on-site circulation revisions, on-site landscaping to replace that which is disturbed by the changes to the driveway, replacement of directional and identifying signs, land acquisitions to accommodate the driveway changes, and so forth. N.J.A.C. 16:47–11.1(e)(1) – (9).

The regulations do not define the qualifying phrase "as appropriate." Even so, the Department cannot act arbitrarily or capriciously in withholding

reasonably necessary funding or services in the enumerated categories. Zimmerman, 237 N.J. at 475 (reiterating the agency's obligation to not act arbitrarily or capriciously).

It is not entirely clear why the parties in this case have fought so mightily over whether the access changes ordered by the Department would be a "modification" instead of a revocation or removal. It appears that appellant's concerns are fueled in part by uncertainty, because the Department has yet to make clear exactly what improvements, landscaping, signage, and so forth it will provide or finance. The Department asserts it is premature to do so, because it has yet to negotiate an easement agreement with the restaurant, and moreover, a different unit within the Department than the OAD handles such issues.

In any event, we shall presume that there is an impact of consequence in how the change in roadway configuration is defined. Utilizing the operative terms we have set forth above, we concur with the Department's final agency decision that the new configuration would be a "modification," not a revocation or removal. The analysis is straightforward.

As noted, Massa Design's pre-existing driveway entrance to Route 66 would be removed. In its place would be a shared driveway[4] that would initially connect with the restaurant's lot, then connect via a private easement for a short distance on the restaurant property, then branch off into Massa Design's property through an interior driveway leading to appellant's building. That route would provide "State highway access" as defined within N.J.A.C. 16:47–2.1, through the means of "an easement over an adjacent lot," Ibid. The route would not comprise "non-State highway access" because the access would not involve the use of a "public street" that isn't a State highway. Ibid.

Because the Department's plan maintains Massa Design's access to State Highway 66 using a private easement, it literally satisfies the definition of a "modification." The plan replaces "all ingress or all egress between a State highway and a lot or site with ingress or egress via a private easement on a different lot or site." N.J.A.C. 16:47–2.1 (emphasis added). The plan therefore is not a revocation or a removal of access.

---

[4] A "shared driveway" under the Access Code "means the only driveway between a State highway and two or more adjoining lots or sites." N.J.A.C. 16:47–2.1. "A shared driveway may be located on one of the lots or it may straddle the lot line between two lots. A lot or site with a shared driveway may also have non-State highway access." Ibid. In the present case, the shared driveway directly accesses a State highway.

22

Our conclusion is consistent with case law. In <u>In re I/M/O Route 206 at New Amwell Road, Block 161, Lot 13B (Hillsborough)</u>, 322 N.J. Super. 345, 355 (App. Div. 1999), we determined that "revocation" under the statute "refers to the loss of direct access to the State highway and the relocation of access onto other than the same State highway." Because the lot owner in <u>In re I/M/O Route 206</u> "retained some direct egress from and ingress to" the same highway, we ruled there was no statutory revocation of access. <u>Ibid.</u> The lot owner had two driveways with highway access and only one of them was being closed — while the second driveway was being widened to compensate for the closure. <u>Id.</u> at 357–58. We thus held that "[t]he proposed access change may be classified as a modification of access because there will be a change in the number of access points and the width of the remaining . . . access point." <u>Id.</u> at 358.[5] In the present case, the sole mode of access will be substituted by another means of access via the shared driveway directly connecting to Route 66.

---

[5] <u>See also</u> <u>State by Comm'r of Transp. v. Marlton Plaza Assocs., LP</u>, 426 N.J. Super. 337, 343–44, 349 (App. Div. 2012) (determining that the proposed access change was a modification and not a revocation, where the Department sought to close one of three access points from the affected lot to the highway); <u>cf.</u> <u>In re Revocation of Access of Block No. 1901</u>, 324 N.J. Super. at 327–31, 336–40 (determining that the statutory revocation criteria were met when a lot's driveway was removed and replaced instead by a ramp and multiple new access roads for lot access).

23

In In re Revocation of Access of Block No. 613, the Supreme Court applied the revocation criteria of N.J.S.A. 27:7–94 to a plan to widen a highway lane on Route 166 and place a median between northbound and southbound lanes. 224 N.J. at 57–58. The widening of the highway would "eliminate" the affected property's access to Route 166, because the new northbound lane would not permit right-hand turns into the lot. Id. at 57. The median would prevent left-hand turns into the affected lot's driveway from the southbound lane, instead requiring those drivers to take a three-quarters-of-a-mile detour on "another local road" to access the lot. Ibid. The detour led the vehicles to the northbound lane on Route 166 to then make a right-hand turn onto a local road before being able to turn into the affected lot. Ibid. Under the Court's reasoning, the plan satisfied the revocation of access statute and the pertinent regulations because the lot retained "convenient, direct, and well-marked" access to the highway. Id. at 69. The Court found that the Department "satisfied its burden of proof to establish that the revocation of direct access from Route 166" to the affected lot conformed with the revocation statute. Ibid.

In sum, the new configuration in this case is a modification and not a revocation, essentially because it utilizes a private easement and not "another local road," id. at 57, to provide access to Route 66. It meets the definition of a

modification set forth in the Access Code, N.J.A.C. 16:47–2.1. The 2018 revisions to the regulations fortify that conclusion. As enacted, they expressly address the present scenario utilizing an easement across an adjacent private property. Ibid.

Having so concluded, we turn briefly to the question of whether the Department's adoption of its proposed plan and the rejection of Massa Design's counterproposal should be nullified. It should not be. The Department's choice was neither arbitrary nor capricious.

The final agency decision and the associated testimony at the hearing amply supports the Director's conclusion that Massa Design's design presented significant risks to safety and traffic flow. The notion of having vehicles make an immediate u-turn on Route 66, after turning left across the center median, rapidly accelerate, and then make a prompt right-hand turn into an access driveway, was reasonably rejected. As was explained at the hearing, the installation of a traffic circle in lieu of a stop light east of the subject premises will cause a more continuous traffic flow on Route 66 with less gaps. The Department's plan appears to be safer. We defer to the Department's expertise over such matters of motorist safety, consistent with the statutory scheme that underscores the Department's duty to "protect[] the public health, safety and

welfare." N.J.S.A. 27:7–90(e); see also Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) ("[A] court must be mindful of, and deferential to, the agency's 'expertise and superior knowledge of a particular field.'" (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992))).

We have considered all other points raised by appellant and conclude they lack sufficient merit to warrant discussion. R. 2:11–3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION